In re WHITNEY PLACE PARTNERS, a Georgia general partnership, Debtor.

**Bankruptcy No. 89–03575.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 20, 1992.

David G. Bisbee, Atlanta, Ga., for debtor.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

By order entered January 11, 1991 (the "Sanction Order"), Debtor's attorney was directed to show cause why he should not be found jointly and severally liable for payment of the sanctions which the Sanction Order imposed upon Debtor's general partners (the "General Partners"). 123 B.R. 117. Debtor's attorney's response was filed February 20, 1991. On June 9, 1992, an order was entered by the Eleventh Circuit Court of Appeals affirming the Sanction Order with respect to its imposition of sanctions against General Partners. 966 F.2d 681.

The Sanction Order set forth the standards for imposition of sanctions under Bankruptcy Rule 9011 and set forth the court's concerns relevant to whether sanctions should be imposed *sua sponte* against Debtor's attorney. Upon reconsideration of those concerns and careful consideration of the written response of Debtor's attorney, no sanctions will be imposed. As a result of the extensive response of Debtor's attorney, however, further elucidation is warranted.

### Debtor In Possession

In a Chapter 11 case, the debtor in possession has a fiduciary duty to act not in its own best interest, but rather in the best interest of the entire estate, including secured and unsecured creditors. *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *In re Doors and More, Inc.,* 126 B.R. 43 (Bankr. E.D.Mich.1991). As noted in the *Weintraub* case, this fiduciary duty to creditors which inheres in the bankruptcy system causes fundamental changes in the nature of relationships between the debtor and its principals and between the debtor and its creditors. The attorney for the debtor in possession is also a fiduciary to the estate. *Doors & More,* 126 B.R. 43.

The unique circumstances which surround insolvency and the filing of a Chapter 11 case place the attorney for the debtor in possession in the unusual position of sometimes owing a higher duty to the estate and the bankruptcy court than to his client. In fact, the status of the client and the attorney may often overlap in a Chapter 11 case, as the debtor's attorney must take conceptual control of the case and provide guidance for management of the debtor, not only to discern what measures

are necessary to achieve a successful reorganization, but to assure that, in so doing, compliance with the Bankruptcy Code and Rules is sought rather than avoided. Debtor's attorney's duty as fiduciary of the estate requires an active concern for the interests of the estate and its beneficiaries. *In re Consupak, Inc.*, 87 B.R. 529 (Bankr. N.D.Ill.1988). The attorney for a debtor in possession is not merely a mouthpiece for his client. "[C]ounsel for the estate cannot close their eyes when the debtor's principals are not acting in the best interests of the estate and its creditors, and certainly cannot aid the adverse activity." *In re Rusty Jones, Inc.*, 134 B.R. 321 (Bankr. N.D.Ill.1991).

### Valuation

 Experienced counsel in Chapter 11 practice understand the necessity for a current evaluation of a Debtor's property; the major issues in an apartment-complex reorganization will develop from the value found. Reliance upon the conclusion of an evaluation out of date for years and failure to investigate current facts central to value are not consistent with the current standard of practice in Chapter 11 representation of Debtors. Such a course of action is puzzling for a represented debtor who sincerely seeks reorganization and could result from one or a combination of factors: inexperience, naiveté, incompetence, and disingenuity. Creativity, innovation and enthusiasm are not, in Chapter 11 practice, substitutes for research and investigation of pertinent facts and applicable law, together with recognition of the issue central to nearly every Chapter 11 apartment complex: value.

### Infusion of Capital

The post-dismissal revelation that Debtor's partners were always willing to infuse additional capital belies the failure to acknowledge that willingness to the court and creditors during the Chapter 11 proceeding. While Debtor's partners may have latently been willing to infuse capital, the record and the entire tenor of the proceeding led to the inescapable conclusion that such an alternative did not quite rise to the possibility of a last resort. The events during the Chapter 11 proceeding made it clear that the infusion of money by other sources, whether loans or third party investment, was a condition precedent to any capital contribution by the General Partners. Principal reliance was placed upon the remote possibility of a government matching loan and then only if a capital contribution was required to obtain other funds.

### Candor

The critical features of the Debtor's Chapter 11 proceeding bearing on good faith and sanctions were not made known by Debtor to the Court or creditors by affirmative disclosure. The secured creditor presented, undisputed except by cross-examination, the relevant facts and circumstances, including value; debtor's attorney revealed somewhat more post-dismissal. With all due respect for the necessity of debtors' attorneys to preserve some strategic flexibility for debtors, the post-dismissal disclosures indicate that much of Debtor's actual plans, if not substantially all, were known only to Debtor and third parties to the Chapter 11. Instead of the Chapter 11 proceeding being the primary vehicle for the reorganization effort, it appears to have been a convenient barrier to immediate foreclosure while other more acceptable avenues of rehabilitation were explored independent of the Chapter 11 process. At best, the now-revealed other efforts of Debtor to reorganize or work out the loan make Debtor's aggregate plans appear diffused rather than focused, and only one of several possibilities was revealed to the Court and creditors. Giving full benefit of the doubt to the professional judgment inhering in the effort, the lack of candor with the Court and creditors suggests a lack of expertise of Debtor's attorney in Chapter 11 practice. Avenues of reorganization seriously pursued by a debtor should not be wholly concealed from the Court and creditors.

### Shallow Investigation

The lack of candor to the court and creditors is consistent with the "hired gun"

quality of the representation provided by Debtor's attorney. The affidavit of Debtor's attorney, together with his conduct, suggests reliance on General Partners for passive receipt of the information which General Partners, not Debtor's attorney, felt relevant. Rather, Debtor's attorney should have requested and obtained from and through General Partners such information as is central to the judgments which must be made regarding reorganization of a debtor. Experience in guiding a Chapter 11 reorganization effort in any real estate case, including a one-asset case such as this, would have required a diligent inquiry into current value at the earliest opportunity, rather than reliance on an appraisal years old. When the secured creditor forced evidence of current value into the record, Debtor's attorney, he now states, was shocked, presumably because the value was less than half of the old appraisal in Debtor's possession.

Moreover, a diligent Chapter 11 inquiry requires cooperation of the debtor's principals, who should proceed to seek a current appraisal, unless, for example, a current one is already available or the Debtor cannot immediately afford one. Giving full benefit of the doubt to Debtor's attorney, his guidance of Debtor appears to have been passive, reactive and defensive, rather than based upon a careful review of the pertinent facts and circumstances relevant to a Chapter 11 reorganization. Experienced practitioners can determine the rough value possibilities from signal indicators: occupancy, revenue, expenses, condition of the property, deferred maintenance, need for capital improvements, and will actively monitor such indicators as the case proceeds.[1] Rarely, however, does a Chapter 11 debtor attempt to establish value solely by discrediting the appraisal of a qualified expert presented by the lender.

The creativity and enthusiasm of Debtor's attorney while in the courtroom spoke eloquently of his considerable courtroom expertise. His inattention to the preparation requisite to an active Chapter 11 reorganization effort, however, at its best illustrates the "hired gun" theory of client representation, which includes circumstances in which the attorney's professional judgment is subsumed by client direction in the case, irrespective of the nature of the proceeding and the clients' legal expertise. At worst, it is a sanctionable abuse of process for intentionally ignoring the obvious facts, as well as the conclusions easily drawn from those facts, by avoiding a factual investigation.

■ In summary, while Debtor's attorney may have neglected some of the obligations imposed upon the attorney for a debtor in possession, that neglect appears to have arisen from a lack of experience and understanding of Chapter 11 practice rather than from intentional bad faith. A bankruptcy court cannot undertake to sanction every attorney who appears in a bankruptcy case with less than adequate expertise in bankruptcy law, which is acquired by a combination of experience and research. Occasionally, even experienced attorneys fail to recognize that their considerable experience in one specialty, such as civil litigation, does not confer the expertise necessary to practice bankruptcy law, especially in Chapter 11 cases. The technical skills necessary to be a courtroom advocate may be present but the nuances and complexities of bankruptcy law, especially when representing a debtor or a major creditor in a Chapter 11 proceeding, are not acquired merely by filing pleadings and making appearances in a bankruptcy courtroom. All too frequently, counsel experienced in non-bankruptcy fields of law take action in bankruptcy matters without adequate research. Lack of experience or expertise, however, is not a condition which Bankruptcy Rule 9011 is intended to address.

---

1. The lack of experience of Debtor's counsel is also shown by the failure of Debtors to timely file the monthly operating reports required by FRBP 2015 and 11 U.S.C. § 704(8). Docketed as "interim reports" and due on or about the 20th date of each month for the preceding month, Debtor's first report, for April, 1989, was not filed until August 22, 1989, together with the report for May. The reports for June, July and August, 1989 were not filed until October 11, 1989 (eight days after the case was dismissed by order entered October 3, 1989).

Therefore, no sanctions under Bankruptcy Rule 9011 will be imposed upon Debtor's Attorney. If no further matters are pending in this case, the Bankruptcy Clerk may close this case.

Let a copy of this order be served on Debtor; Debtor's Attorney, Movant; Movant's attorneys; David G. Bisbee; Respondents and their attorneys; and the U.S. Trustee.

IT IS SO ORDERED.