210 B.R. 19 (1997)
In re JLM, INC., Debtor.
ZEISLER & ZEISLER, P.C., Appellant,
v.
PRUDENTIAL INS. CO. OF AMERICA, Appellee.
BAP No. 96-50014, Bankruptcy No. 95-32211.
United States Bankruptcy Appellate Panel of the Second Circuit.
Argued May 2, 1997.
Decided June 24, 1997.
*20 *21 Zeisler & Zeisler, P.C. by James G. Verrillo, Stephen M. Kindseth, Bridgeport, CT, appellant pro se.
Kelley Drye & Warren L.L.P. by Mark I. Bane, James E. Nealson, New York City, for appellee.
Before: BROZMAN, KAPLAN, and NINFO, JJ.

OPINION
BROZMAN, Bankruptcy Judge.
This is an appeal from the bench ruling of Judge Albert S. Dabrowski of the Bankruptcy Court for the District of Connecticut denying $39,000() of a requested $70,000 in fees to Zeisler & Zeisler P.C. ("Zeisler & Zeisler"), counsel for the debtor in possession. At issue is whether the bankruptcy judge properly denied compensation to the debtor in possession's counsel for services which the bankruptcy court deemed undertaken at the behest of the debtor's former management without considering whether those services were reasonably likely to have benefitted the debtor's estate or were necessary to the administration of the chapter 11 case. We vacate the court's order and remand for further proceedings consistent with this opinion.

I.
Zeisler & Zeisler were retained on November 30, 1995, as court-approved counsel for a corporate chapter 11 debtor in possession, JLM, Inc. ("JLM" or "the debtor"). JLM was removed from possession by the appointment of a chapter 11 trustee on February 15, 1996. The bankruptcy court awarded all of Zeisler & Zeisler's requested compensation for the period from the filing date through January 21, 1996, but substantially less than half of the amount sought for the time after January 21.
Joseph and Loretta Calabrese were the debtor's sole shareholders, officers, and directors. Under their direction and control, JLM operated the Sheraton Hotel and Conference Center ("the Sheraton") in Waterbury, Connecticut. The land and building were owned by the Calabreses personally; JLM was to pay rent for the facility's use. The JLM filing was not the Calabreses' initiation into the snug harbor of chapter 11 for they had earlier filed personal chapter 11 petitions pending in the Hartford Division of the District of Connecticut. They were represented in those proceedings by counsel other than Zeisler & Zeisler.
Pursuant to the Calabreses' confirmed plan of reorganization, Prudential Insurance Company of America ("Prudential") succeeded to their ownership of the JLM stock. Although confirmation of that plan and the consequent transfer of the stock occurred after JLM filed for chapter 11 relief, aware of the impending transfer, JLM scheduled Prudential as its sole shareholder. Appellee's Ex. 1 at 5.
How Prudential succeeded to ownership of the stock is critical to an understanding of what later transpired before Judge Dabrowski. As a secured creditor of the Calabreses, Prudential held a mortgage on the land and hotel as well as a promissory note secured by a pledge of all the JLM stock and a security interest in all JLM's assets. That security interest in the assets of JLM had lapsed, however, unbeknownst to the Hartford bankruptcy judge. There is a suggestion in the record that not only Prudential, but the Calabreses too, were aware of the perfection issue when the Calabreses' plan was confirmed. Appellant's Ex. 18 at 109-110.
About a month or so later, on January 4, 1996, Prudential, as sole shareholder, called a shareholders' meeting, replaced the board of directors, and terminated the Calabreses as management. Significantly, at no time did Prudential seek to terminate Zeisler & Zeisler's retention as counsel for the debtor in possession. Instead, new management immediately commanded the law firm to move to dismiss JLM's chapter 11 case. Zeisler & Zeisler refused, taking the position that Prudential's actions were violative of the automatic stay in that its motivation was solely to "torpedo" JLM's reorganization effort in order to perfect its lapsed security interest and deprive the unsecured creditors of any recovery. By letter to Prudential dated January 5, 1996, Zeisler & Zeisler contended that Prudential's actions were void and of no force or effect. Appellant's Ex. 6, ex. F.
*22 Prudential must have been unsure of whether its actions were permissible, moving, in its guise as a secured creditor, on the same day it terminated the Calabreses and the day before it received Zeisler & Zeisler's letter to dismiss the bankruptcy case on a variety of grounds. Before that motion was argued, Prudential sought additional relief pursuant to section 105 of the Bankruptcy Code, specifically, an order confirming Prudential's postpetition shareholders' meeting and the attendant replacement of the Calabreses as management. Alternatively, apparently recognizing that its actions might be determined to be at odds with the best interests of JLM's estate, Prudential sought the appointment of a chapter 11 trustee. In addition, although Prudential did not believe it necessary under the authority of the Second Circuit's decision in Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.), 801 F.2d 60, 64-67 (2d Cir.1986), Prudential moved for relief from the automatic stay of section 362 if it were held to prevent a change in management.
Zeisler & Zeisler responded by opposing all aspects of Prudential's motions, including the appointment of a chapter 11 trustee. The opposition to the request for the appointment of a trustee is somewhat curious in light of the fact that a trustee surely would have protected the interests of the estate rather than furthering the desires of Prudential. This opposition is perhaps explainable by the existence of a case in Connecticut which invoked the automatic stay to prevent a change of management in similar circumstances. See Command Performance Operators, Inc. v. First Int'l Servs. Corp. (In re First Int'l Servs. Corp.), 25 B.R. 66, 70-71 (Bankr.D.Conn.1982). Notably, however, Command Performance predated the decision of the Second Circuit in Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.), 801 F.2d 60, 64-67 (2d Cir.1986) in which it was held that a bankruptcy court ought not interfere through the injunctive process with normal corporate governance in the absence of a clear showing of abuse. In any event, the Official Committee of Unsecured Creditors ("the creditors' committee") joined with Zeisler & Zeisler on JLM's behalf in opposing the motions and maintaining that the Calabreses were still JLM's management. At no time did Zeisler & Zeisler commence an adversary proceeding seeking a Manville-type injunction.
After a two day hearing on the merits, the bankruptcy court confirmed Prudential's acts of corporate governance. Noting, however, that JLM, at Prudential's behest, was acting in derogation of its fiduciary obligations as a debtor in possession, the court also directed the United States Trustee to appoint a chapter 11 trustee. The court stated that Prudential's actions were "driven in large measure by a desire to correct the lapse in perfection of their four million dollar lien by dismissal of the case or perhaps some other vehicle." Appellant's Ex. 18 at 21.
When Zeisler & Zeisler later applied for compensation, Prudential argued that once it had ousted the Calabreses from management, to the extent that Zeisler & Zeisler were continuing to take orders from them, Zeisler & Zeisler were representing the Calabreses personally. Zeisler & Zeisler steadfastly maintained that they never represented the Calabreses personally but took actions which were reasonably calculated to preserve the assets of the estate and reasonably likely to benefit the creditors. Zeisler & Zeisler had a virtual Greek chorus supporting their bid for compensation. The creditors' committee, the later-appointed chapter 11 trustee, and the United States Trustee all actively urged the court to reward Zeisler & Zeisler for protecting the estate. There was elicited uncontroverted testimony that the unsecured creditors of JLM (as well as of the Calabreses individually) benefited from JLM's bankruptcy filing because of Prudential's lapsed security interest. Appellant's Ex. 23, pages 16-27.
The bankruptcy judge apparently was persuaded by Prudential, although the reasons for his ruling were not given. He denied fees for those services which he concluded were undertaken for the benefit of the Calabreses personally. Appellant's Ex. 23 at 29-31. He stated that "to the extent that [Zeisler & Zeisler] were taking a position on behalf of the Calabreses in connection with a *23 fight for control, they were representing the Calabreses in an individual capacity." Having so concluded, the bankruptcy judge expressly declined to consider whether Zeisler & Zeisler's services were necessary to the administration of the case or beneficial to the estate. Id. Except for mentioning Zeisler & Zeisler's position with regard to the control issue, however, the bankruptcy court did not articulate reasons as to why it concluded that Zeisler & Zeisler was "clearly engaged" in representing the Calabreses personally. This appeal followed.

II.
A. Standard of Review
Bankruptcy courts enjoy wide discretion in determining reasonable fee awards, which discretion will not be disturbed by an appellate court absent a showing that it was abused. Dickinson Indus. Site v. Cowan, 309 U.S. 382, 389, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940); Casco N. Bank v. DN Assocs. (In re DN Assocs.), 3 F.3d 512, 515 (1st Cir.1993). "An abuse of discretion arises where (1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or (2) bases an award on findings of fact that are clearly erroneous." In re Hunt, 196 B.R. 356, 358 (N.D.Tex.1996) (citations omitted); In re First Colonial Corp. of Am., 544 F.2d 1291, 1298 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Notwithstanding, however, "`if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.'" Brown v. Allen, 344 U.S. 443, 459, 73 S.Ct. 397, 408, 97 L.Ed. 469 (1953) (quoting Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937)); see, Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1228-29 (3d Cir.1995) (where bankruptcy court had expressly found that counsel abandoned fiduciary duties and was representing interests adverse to the estate, appellate court could affirm on § 328(c) grounds even though the bankruptcy court did not rely upon that section in denying fees). But it is error for an appellate court to make its own factual findings or to choose between conflicting reasonable inferences. See South St. Seaport Ltd. v. Burger Boys. Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir.1996) (citing In re Cohn, 54 F.3d 1108, 1113 (3d Cir.1995)); In re Sternberg, 85 F.3d 1400, 1407 (9th Cir.1996).
Conclusions of law are reviewed de novo while factual conclusions are reviewed for clear error. See National Union Fire Ins. Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir.1996); FED. R. BANKR. P. 8013. "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The inquiry is not focused on whether the appellate court might have ruled differently if presented with the same evidence, but whether there is a reasonable basis in the record to support the propriety of the bankruptcy judge's decision. Id. at 574, 105 S.Ct. at 1511-12. However, where the bankruptcy court's reasons for its conclusion are not evident and the reviewing court must resort to speculation as to the basis for the bankruptcy court's ruling, the Second Circuit has observed that "the only appropriate procedure is to remand the case." New York State Dep't of Taxation & Fin. v. Hackeling (In re Luis Elec. Contracting Corp.), 917 F.2d 713, 717 (2d Cir.1990); see also Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc., 520 F.2d 1030, 1034 (5th Cir.1975).
B. The Standards for an Award of Compensation
The standards for compensation of professionals in bankruptcy proceedings are set forth in section 330 of the Bankruptcy Code. In relevant part, it provides:
(a)(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 . . .

*24 (A) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement of actual, necessary expenses.
. . .
(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including 
. . .
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
. . .
(4)(A) Except as provided in subparagraph (B)[1], the court shall not allow compensation for-
(i) unnecessary duplication of services or (ii) services that were not 
(i) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case.
11 U.S.C. § 330(a).
An applicant bears the burden of proving the reasonableness of compensation from a bankruptcy estate. Woods v. City Nat'l Bank & Trust Co., 312 U.S. 262, 267-68, 61 S.Ct. 493, 496-97, 85 L.Ed. 820 (1941). Fees should be awarded for services that were beneficial at the time rendered and, by inverse construction, reasonably likely to benefit the debtor's estate. In re Ames Dep't Stores, Inc., 76 F.3d 66, 71, 72 (2d Cir.1996) (quotation omitted).
Notwithstanding section 330(a), the bankruptcy court may deny compensation pursuant to section 328(c) if it determines that counsel for the estate is not disinterested or represents or holds an interest adverse to the interests of the estate. See, e.g., Fellheimer, Eichen & Braverman, P.C, v. Charter Technologies, Inc., 57 F.3d 1215, 1228-29 (3d Cir.1995); In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 843, 845 (Bankr. C.D.Cal.1991). Similarly, the court may deny fees "on account of such attorney's wrongdoing, negligence, or serious breaches of fiduciary obligations." In re Wilde Horse, 136 B.R. at 844 (citing cases); see also In re Leslie Fay Cos., Inc., 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994) (denying fees for counsel's violating the disclosure requirements of section 327(a) and Fed.R.Bankr.P.2014(a)). Here, Judge Dabrowski did not find that Zeisler & Zeisler represented or held an interest adverse to the estate or that the firm engaged in wrongdoing, negligence or serious breaches of fiduciary obligations. His sole reason for disallowing compensation was that for certain, but not all, services which they performed after Prudential ousted the Calabreses, the law firm effectively was representing not the estate but the Calabreses. He reached this conclusion without considering whether any of the disallowed services were reasonably likely to benefit the debtor's estate.
In re Rancourt, 207 B.R. 338 (Bankr. D.N.H.1997), illustrates proper findings supporting a conclusion that counsel's services were not reasonably likely to benefit the estate. There, the debtor in possession, an individual, had attempted to confirm a plan of reorganization which provided for payment in full of the obligations arising from an asbestos-infected site owned by the debtor which required substantial amounts of cleanup. Notwithstanding that the debtor was not proposing to retain the property under its plan and the estate lacked equity in the property, the debtor never disclosed the alternative possibility of attempting to abandon the contaminated property and thus relieve the estate of the substantial obligations related thereto. Years later when the debtor's plan failed due to a lack of funding to effectuate the clean-up, the debtor's counsel applied for fees. The court found that debtor's counsel breached its fiduciary duty to the estate by representing the interest of the individual on issues which were adverse to the estate. Counsel had taken the position that the clean-up expenses were administrative ones *25 without disclosing or examining the possibility that they were not. If the expenses were administrative, as counsel maintained, then the estate would have to pay them in full, to the detriment of the unsecured creditors, thereby effectively giving the individual debtor a discharge of indebtedness which counsel believed was otherwise nondischargeable. The court said: "The problem for the debtor's attorneys in supporting full allowance of their requested fees is not that they were necessarily wrong in concluding that an effort at abandonment would not be successful but rather they `took it upon themselves' to resolve that arguable issue in favor of the interests of the individual debtor and at the expense of the bankruptcy estate without any disclosure . . . of that alternate possibility." Id. at 361; see In re Wilde Horse, 136 B.R. at 840 ("[T]he attorney may not simply close his or her eyes to matters having a legal and practical consequence for the estate  especially where the consequences may have an adverse effect.").
A common thread running through In re Rancourt and similar cases is that the attorney either abandoned the interests of the estate and breached fiduciary obligations, or took actions on behalf of the principals which were adverse to the interests or at the expense of the estate and were not reasonably likely to benefit the estate or the administration of the case. See, e.g., Rome v. Braunstein, 19 F.3d 54 (1st Cir.1994); In re Greene, 138 B.R. 403, 409 (Bankr.S.D.N.Y. 1992); In re Bolton-Emerson, Inc., 200 B.R. 725, 732-33 (D.Mass.1996); In re Office Prods. of Am., Inc., 136 B.R. 983, 990-91 (Bankr.W.D.Tex.1992); In re Love, 163 B.R. 164 (Bankr.D.Mont.1993); In re Rusty Jones, Inc., 134 B.R. 321, 342 (Bankr.N.D.Ill. 1991); In re Kendavis Indus. Int'l. Inc., 91 B.R. 742, 751-52, 754 (Bankr.N.D.Tex.1988).
The mere fact, however, that an attorney for a debtor in possession opposes and loses a motion for control "does not ipso facto mean that the attorney is representing the interests of the debtor's principals and management to the exclusion of the creditors." See In re Spanjer Bros., Inc., 191 B.R. 738, 751-52 (Bankr.N.D.Ill.1996). If there is a reasonable basis for contending that the estate will benefit by opposing conversion or taking a position on other control-related matters, compensation will not be denied. See In re DN Assocs., 3 F.3d 512, 516 (1st Cir.1993), aff'd 144 B.R. 195, 196 (Bankr.D.Me.1992); In re Spanjer Bros., 191 B.R. at 751-52; cf. In re Amstar Ambulance Serv. Inc., 120 B.R. 391, 396 (Bankr. N.D.W.Va.1990) ("absent a compelling explanation, attorney fees incurred beyond the period where there is no likelihood of a successful reorganization" are not compensable from the estate); accord Rubner & Kutner v. United States Trustee (In re Lederman Enters., Inc.), 997 F.2d 1321. 1323-24 (10th Cir.1993); In re Office Prods. of America, Inc., 136 B.R. 983; In re Alderson, 114 B.R. 672, 679 (Bankr.D.S.D.1990).
Zeisler & Zeisler insist that they must be compensated from the estate because to oppose Prudential's take-over attempts "any less zealously" would have been a breach of counsel's independent fiduciary obligation to the estate. They argue that their position was later vindicated by the bankruptcy court's implicit recognition that Prudential sought to take over management in order to dismiss the case and perfect its lapsed security interest. Zeisler & Zeisler contend that this was a clear breach of Prudential's duty as ostensible management, permitting Zeisler & Zeisler's opposition and rendering that opposition both necessary and reasonably likely to benefit the debtor's estate. So we turn to an analysis of the duties owed by the law firm.
C. The Duties of Counsel for the Debtor in Possession
Both management and its counsel have fiduciary duties to an estate in bankruptcy. Brown v. Gerdes, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944); In re Arlan's Dep't Stores, Inc., 615 F.2d 925 (2d Cir.1979); In re Whitney Place Partners, 147 B.R. 619, 621 (N.D.Ga.1992) (citing In re Rusty Jones, Inc., 134 B.R. 321 (Bankr.N.D.Ill.1991); In re Consupak, Inc., 87 B.R. 529 (Bankr. N.D.Ill.1988)); In re Sky Valley, Inc., 135 B.R. 925, 939 (Bankr.N.D.Ga.1992); In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 840 (Bankr.C.D.Cal.1991) (citing cases); 1 L. *26 KING, COLLIER ON BANKRUPTCY ¶ 8.01[1] at 8-4, ¶ 8.01[3][b] at 8-7 (15th ed. rev.1996).
The debtor's attorney, while not a trustee, nevertheless is charged with the duty of counseling the debtor in possession to comply with its duties and obligations under the law. See Susan M. Freeman, The Ethics of Representing Debtors and Creditors in Bankruptcy, 680 PLI/COMM 181, 189 & n. 15 (Jan.1994); In re Wilde Horse, 136 B.R. at 840 ("Because the attorney for the debtor in possession is a fiduciary of the estate and an officer of the Court, the duty to advise the client goes beyond responding to the client's request for advice. It requires an active concern for the interests of the estate, and its beneficiaries. . . ."). When a debtor in possession is in breach of its fiduciary obligations, counsel must advise the client "to follow a lawful course." CONN. RULES OF PROFESSIONAL CONDUCT Rule 1.6 comment. "The attorney has a duty to remind the debtor in possession, and its principals, of its duties under the Code, and to assist the debtor in fulfilling those duties." In re Wilde Horse, 136 B.R. at 840 (citing In re Consupak, Inc., 87 B.R. 529, 548-551 (Bankr. N.D.Ill.1988); In re Sowers, 97 B.R. 480, 488 (Bankr.N.D.Ind.1989)).
In the nonbankruptcy context, absent ongoing fraud or criminal activity, an attorney's obligation is to advise the client and, if the client disagrees, resign. CONN. RULES OF PROFESSIONAL CONDUCT Rules 1.13(c), 1.16, & 3.3. But because "[b]ankruptcy causes fundamental changes in the nature of corporate relationships," Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985), obligating the corporation's board of directors to consider the best interests of creditors, and because counsel for the debtor in possession has fiduciary obligations not ordinarily foisted upon the attorney-client relationship, the attorney for the debtor in possession may not simply resign where the client refuses the attorney's advice concerning the client's fiduciary obligations to the estate and its creditors. Counsel must do more, informing the court in some manner of derogation by the debtor in possession. See Adrienne O'Connell McNamara & Carl A. Eklund, Ethical Quandaries of a Debtor's Lawyer, 389 PLI/REAL 243, 275 (Apr.-June 1993); 1 NORTON BANKR. L. & PRAC.2d § 27:22 & n. 33 (Supp.1997) (citing In re Swansea Consol. Resources, Inc., 155 B.R. 28, 38 n. 14 (Bankr. D.R.I.1993) (as an officer of the court, debtor in possession's counsel "had absolutely no choice but to disclose" unauthorized diversion of debtor in possession funds to foreign bank); Agresti v. Rosenkranz (In re United Utensils Corp.), 141 B.R. 306, 309 (Bankr. W.D.Pa.1992) ("If the debtor is not fulfilling its fiduciary duty to the estate, it is the responsibility and duty of debtor's counsel to bring such matters to the attention of the court")); Vining v. Ward (In re Ward), 894 F.2d 771, 776 (5th Cir.1990) (had attorney for the debtor known of existence of an unscheduled judgment against the estate, "as an officer of the court, [the attorney] would certainly have had a duty to inform the court"); In re Rivers, 167 B.R. 288, 300 (Bankr.N.D.Ga.1994); In re Wilde Horse Enterprises, Inc., 136 B.R. at 847 (recognizing that counsel for the debtor in possession faced with management's persistence in breaching fiduciary obligation must alert the court through motion to be relieved as counsel or otherwise). As the Ninth Circuit recently phrased it, "Under no circumstances, however, may the lawyer for a bankruptcy estate pursue a course of action, unless he has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate." Everett v. Perez (In re Perez), 30 F.3d 1209, 1219 (9th Cir.1994). It is to ensure this integrity of the bankruptcy process where, by definition, a debtor in possession is not disinterested, that counsel for the debtor in possession must be disinterested, free of any adverse entanglements which could cloud its judgment respecting what is best for the estate.
Plainly, Zeisler & Zeisler properly refused Prudential's instructions to move to dismiss JLM's case. The bankruptcy judge implicitly recognized this when he installed a chapter 11 trustee. What is questionable here is *27 whether Zeisler & Zeisler was free to decide for itself, in the absence of seeking injunctive relief, that the acts of corporate governance were null and void such that the Calabreses were still valid management of the debtor in possession. Certainly the bankruptcy judge could reasonably challenge the firm's decision to oppose appointment of a chapter 11 trustee as an antidote to Prudential's aggressive acts. Moreover, there is no evidence in this record that Zeisler & Zeisler tried to counsel new management about the scope of its fiduciary obligations. On the other hand, particularly in light of the fact that Prudential did not purport to act as management, the bankruptcy court could find that Zeisler & Zeisler was well justified in continuing to act on behalf of the estate. The problem with the court's decision, however, is that there are virtually no factual findings and no analysis of why particular services were left uncompensated other than the unexplained statement that Zeisler & Zeisler were representing the Calabreses. Nor is there any analysis of whether Zeisler & Zeisler had a reasonable basis for asserting that new management's installation ran afoul of the automatic stay. If the firm had such a reasonable basis, then it perhaps could be said that its opposition to the motion to confirm new management was undertaken with an eye toward benefitting the estate. Indeed, the bankruptcy court effectively acknowledged this by awarding fees after the January 4 board meeting, concluding that due to "the conditions that then existed," it would not have been appropriate for Zeisler & Zeisler to have blindly followed Prudential's January 4 instructions to dismiss the case. Thus, the court saw the propriety of at least some of Zeisler & Zeisler's actions.
In In re Ames Department Stores, Inc., the Second Circuit vacated an order disallowing fees for counsel for the debtor in possession and remanded with directions to apply the section 330 standard "in an objective manner, based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances." 76 F.3d 66, 72 (2d Cir.1996); see also In re Keene, Corp., 205 B.R. 690, 696 (Bankr.S.D.N.Y. 1997): 3 L. KING, COLLIER ON BANKRUPTCY, ¶ 330.04[1][iv] at 330-33 (15th ed. rev.1996). In Ames, the law firm argued that the debtors had a right to terminate a retiree benefit contract pursuant to the terms of that contract notwithstanding sections 1129(a)(13) and 1114 of the Bankruptcy Code. The district court in Ames held that the argument had no legal merit and that the appeal was taken solely to generate fees for the law firm. The problem was that the legal argument may have had merit to a reasonable lawyer at the time the services were performed and there were no factual findings upon which to base the district court's holding about the law firm's motives. The same flaws exist here.

Conclusion
The order of the bankruptcy court is vacated and the matter remanded for disposition in accordance with the appropriate legal standard after such further proceedings as the bankruptcy court deems appropriate.
NOTES
[1] Subparagraph (B) deals with chapters 12 and 13 cases and is not applicable here.