**In re Marc F. STEIN and Jill S. Stein, Debtors.**

**No. 11–10283–MDC.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 25, 2013.

Corinne Samler Brennan, Klehr Harrison Harvey Branzburg LLP, Philadelphia, PA, Matthew A. Hamermesh, Hangley Aronchick Segal & Pudlin, Philadelphia, PA, Paul J. Winterhalter, Law Offices of Paul J. Winterhalter, P.C., Philadelphia, PA, for Debtors.

William C. Miller, Chapter 13 Trustee, Philadelphia, PA, Trustee.

## ORDER

MAGDELINE D. COLEMAN,
Bankruptcy Judge.

**AND NOW,** the Law Offices of Paul J. Winterhalter, P.C. (the "Applicant"), former counsel for Marc F. Stein and Jill S. Stein (collectively, the "Debtors"), caused to be filed with this Court a Second Interim and Final Application for Compensation and Reimbursement of Expenses for Counsel to the Debtors [Docket No. 115] (the "Final Application") in which the Applicant requests the allowance of compensation in the amount of $40,868.75 and the reimbursement of expenses in the amount $426.78.

**AND,** the Applicant filed an Application for Compensation and Reimbursement of Expenses dated February 21, 2012 [Docket No. 88] (the "First Application," collectively with the Final Application, the "Applications"), in which the Applicant requested the allowance of compensation in the amount of $28,391.25 and the reimbursement of expenses in the amount $75.67.

**AND,** William C. Miller, the Chapter 13 standing trustee (the "Trustee") filed an Objection dated February 8, 2013 [Docket No. 123] (the "Trustee's Objection"), objecting to the Applications on the ground that the Applicant received certain post-petition payments from the Debtors without prior court approval.

**AND,** upon consideration of the Applicant's Memorandum dated January 14, 2013 [Docket No. 120] (the "Memorandum"), wherein the Applicant addressed the propriety of its receipt of certain post-petition payments.

**AND,** this Court held a hearing on February 28, 2013, to address the Applications (the "February 28 Hearing").

**AND,** at the February 28 Hearing, Paul J. Winterhalter, Esquire ("Winterhalter"), then counsel for the Debtors, addressed the Applicant's receipt of certain post-petition payments and the Applicant's involvement in the settlement of a claim against the Debtors held by Milestone Construction Management, Inc. ("Milestone").

**AND,** at the February 28 Hearing, this Court put Winterhalter on notice that the Applicant was not to receive any post-petition payments without prior approval from this Court. Transcript of February 28, 2013 Hearing ("Transcript January 28, 2013"), 1:27:45–1:28:20.

**AND,** this Court has previously expressed its concerns regarding Winterhalter's handling of the claim against Michael Samschick held by Marc F. Stein. *See, e.g., In re Stein,* Bky. No. 11–10283, 2012 WL 4757805, *3 n. 3 (Bankr.E.D.Pa.2012).

**The Post–Petition Payments**

**AND,** Winterhalter filed a 2016(b) statement dated January 28, 2011, on behalf of the Applicant [Docket No. 16] wherein he disclosed that the Applicant received $5,000.00 prior to the filing of the petition (the "Pre–Paid Retainer").

**AND,** despite being required to, Winterhalter failed to disclose the source of the Pre–Paid Retainer. Fed. R. Bankr.P.

2016(a) (requiring disclosure of "the source of the compensation so paid or promised").

AND, Winterhalter filed a supplemental 2016(b) statement dated June 21, 2011, on behalf of the Applicant [Docket No. 56], wherein he disclosed that on June 10, 2011, Applicant received "an additional retainer payment" in the amount of $1,500.00 from the Debtors.

AND, Winterhalter filed a second supplemental 2016(b) statement dated October 31, 2011, on behalf of the Applicant [Docket No. 80], wherein he disclosed that on October 31, 2011, Applicant received "an additional retainer payment" in the amount of $3,078.72 from the Debtors.

AND, Winterhalter filed a third supplemental 2016(b) statement dated June 19, 2012, on behalf of the Applicant [Docket No. 99], wherein he disclosed that on June 4, 2012, Applicant received "an additional retainer payment" in the amount of $2,000.00 from Stein Steel Construction, Inc.

AND, Winterhalter admits that Applicant received a total of $6,578.72 in post-petition retainer payments (the "Post–Petition Payments," collectively with the Pre–Paid Retainer, the "Retainers").

AND, Winterhalter never disclosed the source of the Pre–Paid Retainer.

AND, Matthew A. Hamermesh, present counsel for the Debtors, delivered to this Court a letter dated September 25, 2013 [Docket No. 161] (the "Hamermesh Letter"), that disclosed that the Applicant received $5,000.00 (the "Patagonia Payment") from Patagonia, Inc., an entity in which the Debtors are alleged to own "an indirect 20% interest."

AND, the Debtors' interest in Patagonia, Inc. was not previously disclosed.

AND, the Hamermesh Letter did not state when the Applicant received the Pa-

tagonia Payment or how this payment related to the other compensation, including the Pre–Paid Retainer, received by the Applicant.

AND, despite this Court's warnings at the February 28 Hearing and the requirements of Fed. R. Bankr.P.2016(a), Winterhalter did not disclose that Patagonia, Inc. was the source of any of the Retainers received by the Applicant. *See, e.g., In re Harris Agency, LLC,* 451 B.R. 378, 395–96 (Bankr.E.D.Pa.2011) (sanctioning the Applicant for his failure to disclose the source of payments received).

AND, Winterhalter admits that Applicant received the Post–Petition Payments without obtaining the prior approval of this Court.

■ AND, the Court of Appeals having held that the bankruptcy court "has a *duty* to review fee applications, notwithstanding the absence of objections by the United States trustee . . ., creditors, or any other interested party, a duty which . . . derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest," *In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833, 841 (3d Cir.1994) (emphasis in original).

■ AND, the Third Circuit generally prohibits a debtor's attorney from receiving compensation, inclusive of post-petition retainers, without prior court approval. *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 103 (3d Cir.1988); *In re Arkansas Co., Inc.,* 798 F.2d 645 (3d Cir.1986); *In re Jensen,* Bky. No., 2008 WL 2550556 (Bankr.E.D.Pa. Jun. 18, 2008) (ordering disgorgement of mortgage received post-petition by debtor's attorney); *In re Berg,* 356 B.R. 378, 380 (Bankr.E.D.Pa.2006) ("an attorney may not receive post-petition payments from property of the estate without application to and approval of the court."); *In re Pannebaker Custom Cabi-*

*net Corp.,* 198 B.R. 453, 462–63 (Bankr. M.D.Pa.1996) ("courts have permitted postpetition disbursements to professionals prior to notice and a hearing under rare circumstances."); *In re Walnut Associates,* Bky. No. 91–15150, 1992 WL 361714, at *1 (Bankr.E.D.Pa. Dec. 1, 1992) (stating that an attorney should never receive a retainer between the time of filing of its application to employ and the court's approval of application for compensation).

■ **AND,** the Applicant's receipt of the Post–Petition Payments was improper because it did not seek approval for any procedure governing the interim payment of its fees.[1] *In re Jensen,* Bky. No., 2008 WL 2550556 ("during the postpetition/pre-confirmation phase of a chapter 13 case, a debtor's counsel may not take money or property from the bankruptcy estate without bankruptcy court authorization."); *Berg,* 356 B.R. at 380; *Pannebaker Custom Cabinet Corp.,* 198 B.R. at 464; *In re DeRuskin Enterprises, Inc.,* Bky. No. 93–10820, 1993 WL 594354 (Bankr.E.D.Pa. Feb. 16, 1994) ("Post-petition payment of retainers prior to allowances of compensation in fee applications, unless specifically allowed by the court, are never appropriate.").

**AND,** even though Winterhalter did disclose the Applicant's receipt of the Post–Petition Payments, he removed from this Court and other parties in interest their ability to review and approve the Applicant's retention of the Post–Petition Payments. Winterhalter created for the Applicant an unsupervised fee payment arrangement in contravention of the re-quirements of the Code. *Pannebaker Custom Cabinet Corp.,* 198 B.R. at 463 ("The core problem in this case is that, by failing to apply for permission to accept postpetition disbursements, C & C has inappropriately removed the Bankruptcy Court from the prior review process.").

**The Milestone Settlement**

**AND,** Milestone previously filed a Proof of Claim dated February 2, 2011, asserting an unsecured claim in the amount of $228,975.00 (the "Milestone Claim").

**AND,** Milestone previously filed a Complaint dated June 15, 2011 [Adv. No. 11–469, Docket No. 1], seeking to have the Milestone Claim declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

**AND,** this Court entered an Order dated October 5, 2012 [Adv. No. 11–469, Docket No. 30], exempting the Milestone Claim from discharge.

**AND,** Milestone filed a Motion for Relief from the Automatic Stay dated October 15, 2012 [Docket No. 105] (the "Lift–Stay Motion"), seeking authority to enforce the Milestone Claim.

**AND,** this Court was scheduled to hear the Lift–Stay Motion at a hearing scheduled for November 8, 2012; however, prior to this hearing, Milestone withdrew the Lift–Stay Motion.

**AND,** as reported to this Court in the Debtors' Motion to Voluntarily Dismiss Chapter 13 Case Pursuant to 11 U.S.C. § 1307(b) dated November 12, 2012 [Docket No. 109] (the "Dismissal Motion"), the Debtors "reached an out of court settle-

---

1. In some circumstances, courts will permit the interim payment of fees conditioned on later approval by the bankruptcy court. *In re Mariner Post-Acute Network, Inc.,* 257 B.R. 723 (Bankr.D.Del.2000). Such arrangements are permitted only if the party seeks court approval of the procedure *prior to its implementation. Id.; In re Pittsburgh Corning* *Corp.,* 255 B.R. 162 (Bankr.W.D.Pa.2000) (approving administrative fee order permitting monthly interim payments of 80% of professional fees). Contrary to this authority, the Applicant has not sought approval of any procedure permitting the payment of the Post–Petition Payments.

ment with Milestone resolving any and all claims Milestone had at any time against the Debtors." Dismissal Motion, ¶ 4.

**AND,** at the February 28 Hearing, the terms of the "out-of-court" settlement between the Debtors and Milestone were disclosed to this Court.

**AND,** at the February 28 Hearing, Winterhalter advised this Court that the Debtors had borrowed $150,000.00 to fund the settlement with Milestone.

**AND,** the Hamermesh Letter later disclosed that in addition to the borrowed funds, the Debtors received $50,000.00 from Michael Samschick ("Samschick") that was allegedly paid to Milestone as a part of the settlement with Milestone. This amount represented a partial settlement of the Debtors' prepetition claim against Samschick.

**AND,** at the February 28 Hearing, Winterhalter admitted that, despite the requirements of 11 U.S.C. § 364(b) and Fed. R. Bankr.P. 9019, the Debtors did not provide notice to this Court or their creditors of their intent to borrow or their intent to settle the Samschick claim or Milestone Claim (collectively, the "Claims").

**AND,** at the February 28 Hearing, Winterhalter admitted that he counseled the Debtors and Milestone against entering into the out-of-court settlement because it was in contravention of applicable laws.

**AND,** at the February 28 Hearing, Winterhalter admitted that he made no effort

to report his clients' or Milestone's misconduct to this Court.

 **AND,** contrary to Winterhalter's understanding, his professional obligations to his clients do not trump the obligations imposed upon him as an officer of this Court[2] or his obligations imposed upon him as a fiduciary of the Debtors' estate. *Harris Agency,* 451 B.R. at 391 ("As counsel to a bankruptcy estate, it is the job of a firm to maximize value for both the debtor *and* its creditors.");[3] *In re Boyd,* 401 B.R. 137, 142 (Bankr.D.N.J.2008) (recognizing attorney for Chapter 13 debtor acts a fiduciary of the debtor's estate).

 **AND,** in performance of his fiduciary obligation to the Debtors' estate and in performance of his professional obligations,[4] Winterhalter was responsible for supervising his clients' conduct and instructing them to ensure compliance with the Bankruptcy Code. *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.),* 210 B.R. 19, 26 (2d Cir. BAP 1997) ("The debtor's attorney, while not a trustee, nevertheless is charged with the duty of counseling the debtor in possession to comply with its duties and obligations under the law."); *In re Food Management Group, LLC,* 380 B.R. 677, 708 (Bankr. S.D.N.Y.2008) (recognizing that an attorney "cannot simply close his or her eyes to matters having an adverse legal and practical consequence for the estate and creditors."); *In re Source Enterprises, Inc.,* Bky. No. 06–11707, 2008 WL 850229, *14 (Bankr.S.D.N.Y.2008) (recognizing that attorney for debtor "was obligated to advise

**2.** Pa. R.P.C. 3.3(b).

**3.** In *Harris,* Winterhalter was specifically reprimanded for the same conduct now at issue: (1) his failure to comply with the disclosure requirements imposed by Fed. R. Bankr.P. 2016, and (2) his failure to abide by his fiduciary obligations to the estate. Despite the imposition of sanctions that included the per-

formance of "six hours of Pennsylvania continuing legal education ..." *Harris Agency,* 451 B.R. at 399, Winterhalter appears to have learned nothing from the instructions of my colleague.

**4.** Pa. R.P.C. 1.2(d).

the Debtor of, among other things, its fiduciary duties as well as of his view that BEGS's control was putting the Debtor in breach of such duties."); *In re Zagara's Fresh Markets, LLC,* Bky. No. 03–43017, 2006 WL 4452980, *3 (Bankr.D.N.J. Apr. 13, 2006) (recognizing the obligation of the debtor's attorney to "to supervise clients' conduct for compliance with the Bankruptcy Code" and "instruct the debtor on the appropriate conduct and must develop client control"); *In re Berg,* 268 B.R. 250, 261–262 (Bankr.D.Mont.2001) (recognizing that debtor's attorney "must instruct the debtor on appropriate conduct and must develop client control"); *In re Whitney Place Partners,* 147 B.R. 619, 620–21 (Bankr.N.D.Ga.1992) ("[T]he debtor's attorney must take conceptual control of the case and provide guidance for management of the debtor, not only to discern what measures are necessary to achieve a successful reorganization, but to assure that, in so doing, compliance with the Bankruptcy Code and Rules is sought rather than avoided").

■■■■AND, Winterhalter's fiduciary obligations include the obligation to report to this Court any instances of his clients' misconduct. *JLM, Inc.,* 210 B.R. at 26 (recognizing that fiduciary obligation requires debtor's counsel to inform the court of any breach by the debtor-in-possession of its fiduciary duty); *Food Management Group, LLC,* 380 B.R. at 709 (recognizing that attorney's fiduciary role requires him to report client misconduct to the bankruptcy court); *Agresti v. Rosenkranz (In re United Utensils Corp.),* 141 B.R. 306, 309 (Bankr.W.D.Pa.1992) ("If the debtor is not fulfilling its fiduciary duty to the estate, it is the responsibility and duty of debtor's counsel to bring such matters to the attention of the court"); *In re Wilde*

*Horse Enterprises, Inc.,* 136 B.R. 830, 847 (Bankr.C.D.Cal.1991) (holding that counsel for debtor-in-possession must inform the court of debtor's breach of fiduciary obligation).

■■ AND, a determination that an attorney has breached his fiduciary obligations disqualifies the attorney from receiving any compensation for services performed subsequent to the breach. *Wolf v. Weinstein,* 372 U.S. 633, 641, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) (recognizing bankruptcy rules incorporate "the historic maxim of equity that a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest"); *In re New York City Shoes, Inc.,* 89 B.R. 479 (Bankr.E.D.Pa.1988) (denying payment of all compensation relating to services performed after employment by purchaser of debtor's assets).

AND, at a hearing before this Court held on October 13, 2013, present counsel for the Debtors and Winterhalter explained to this Court that the Applicant had agreed to reduce its request for compensation to the amount of the Retainers and relinquish its claim to reimbursement from any funds presently held by the Trustee.

It is hereby **ORDERED** and **DETERMINED:**

1. The Applications are **GRANTED IN PART AND DENIED IN PART.**

2. The Applicant violated the § 330 compensation procedures [5] by receiving the Post–Petition Payments without this Court's prior approval.

■■ 3. Winterhalter violated Fed. R. Bankr.P.2016 by failing to disclose that Patagonia, Inc. was the source of any of the Retainers.

---

**5.** In addition to failing to obtain this Court's prior approval, the Applicant did not receive the Post–Petition Payments after notice and hearing as required by § 330(a)(1).

4. In contravention of his professional obligations and his obligations as a fiduciary of the Debtors' estate, Winterhalter allowed his clients to violate § 364(b) and Fed. R. Bankr.P. 9019 by effecting the out-of-court settlement of the Claims.

5. In light of Winterhalter's failure to obtain prior court approval of the Applicants' receipt of the Post–Petition Payments, Winterhalter's failure to disclose Patagonia, Inc. as the source of any of the Retainers, and Winterhalter's failure to report to this Court his clients' settlement of the Claims, compensation and reimbursement of expenses are allowed in favor of the Applicant in the total amount of $11,578.72 [6] (the "Allowed Compensation and Expenses"). L.B.R. 2016–1(f) (governing procedure for disposition of fee applications without a hearing).

6. The Trustee is not obligated to make any disbursements to the Applicant.

---

[6]. This amount represents the amount Winterhalter stated the Applicant was willing to accept a payment of $11,578.72 in exchange for the services rendered on behalf of the Debtors during the course of this bankruptcy. Transcript of October 3, 2013 Hearing, 26:21–27:16.