**In re The BENNETT FUNDING GROUP, INC., Bennett Receivables Corporation, Bennett Receivables Corporation II, Bennett Management and Development Corporation, Debtors.**

**In re ALOHA CAPITAL CORPORATION, American Marine International, Ltd., Resort Service Company, Inc., The Processing Center, Debtors.**

Bankruptcy Nos. 96–61376 to 96–61379, 96–61934, 96–61829, 96–61830, 96–61977.

United States Bankruptcy Court, N.D. New York.

Jan. 9, 1997. ·

Simpson, Thacher & Bartlett, M.O. Sigal, Jr., New York City, for Trustee.

Wasserman, Jurista & Stolz, Millburn, NJ (Daniel Stolz of counsel), for Unsecured Creditors Committee.

Guy Van Baalen, Assistant U.S. Trustee, Utica, NY.

Alistaire Bambach, U.S. Securities & Exchange Commission, NY Regional Office, New York City.

Bond, Schoeneck & King, L.L.P., Syracuse, NY (James Dati of counsel).

Hancock & Estabrook, L.L.P., Syracuse, NY (Stephen Donato of counsel).

Green & Seifter, Syracuse, NY (Virginia Hoveman of counsel).

Melvin & Melvin, Syracuse, NY (Louis Levine of counsel).

Costello, Cooney & Fearon, Syracuse, NY (Michael Balanoff of counsel).

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

### STEPHEN D. GERLING, Chief Judge.

The Court has before it the First Applications of Richard C. Breeden As Trustee For An Order (1) Allowing Interim Compensation and Reimbursement of Expenses, (2) Authorizing Provisional Payment of Monthly Trustee Fees and (3) Authorizing Provisional Payment of Certain Expenses ("First Interim Applications"). The First Interim Applications have been filed both in the Bennett cases and in the Aloha cases.

The First Interim Applications appeared on the Court's motion calendar at Utica, New York on November 14, 1996, and following oral argument the Court reserved decision, but did not require the filing of any memoranda of law.

Opposition to the First Interim Applications was filed by the Securities and Exchange Commission ("SEC"), the Committee of Unsecured Creditors ("CC"), the United States Trustee ("UST") and numerous bank creditors ("Banks").

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A) and (B).

### FACTS

On March 29, 1996, each of the jointly administered Bennett Debtors named herein [1] filed voluntary petitions pursuant to chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). On April 18, 1996 following the entry of an Order dated April 12, 1996, Richard C. Breeden, Esq. ("Trustee") was appointed by the United States Trustee ("UST") to serve as Trustee in these cases pursuant to Code § 1104. The Trustee's appointment was approved by an Order of this Court dated April 18, 1996. Joint administration of these cases was approved in an Order dated May 5, 1996.

On April 19, 1996, American Marine International, Ltd. ("AMI") and the Resort Service Company, Inc. ("RSC") filed voluntary petitions for relief pursuant to chapter 11 of the Code. On April 25, 1996, an involuntary petition pursuant to chapter 11 of the Code was filed against Aloha Capital Corporation ("Aloha") by The Bennett Funding Group, Inc, The Processing Center, Inc. ("TPC") and Resort Funding, Inc., and thereafter a voluntary petition under chapter 11 was filed by TPC on April 26, 1996. An Order for Relief in the Aloha case was signed by this Court on May 10, 1996.

By Order dated May 13, 1996, this Court approved the appointment of the Trustee as Trustee for debtors AMI, RSC and TPC. On that same date, the Court entered an exparte Order compelling the UST to appoint an operating trustee in the Aloha bankruptcy

---

1. This group includes The Bennett Funding Group, Inc., Bennett Receivables Corporation, Bennett Receivables Corporation II, and Bennett Management and Development Corporation.

pursuant to 11 U.S.C. § 1104. On May 15, 1996, the UST appointed the Trustee to serve in the Aloha case. The Trustee's appointment was approved by the Court on that date.

By an Order dated June 12, 1996, this Court ordered joint administration of the Aloha, AMI, RSC and TPC bankruptcies ("Aloha Debtors") pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").

At the time of his appointment in each group of cases, the Trustee was a partner in the accounting firm of Coopers & Lybrand, L.L.P. ("C & L"), however, effective October 1, 1996, the Trustee withdrew from C & L.

The within jointly administered cases comprise in part what has been characterized by the SEC as the largest "Ponzi Scheme" in United States history. It is alleged that during the six years preceding the bankruptcy filings, the within Debtors and other affiliates collectively referred to as the "Bennett Companies" sold more than $2.13 billion in unregistered securities. As a result, more than 12,000 creditors are now owed in excess of $1 billion. Operation of the Bennett Companies involves working with more than 45,000 customers and 250 lenders on a monthly basis.

The Trustee's First Interim Applications assert that he has dedicated more than 1200 hours of time over approximately 6 months in efforts to stabilize the Bennett and Aloha Debtors, that his commitment to the trusteeships has caused him to resign his senior level position with C & L and that the position has necessitated long hours under very difficult conditions. The Trustee notes that during the previous 6 months he has "collected and recovered over $100,000,000 of assets." *See* Trustee's First Interim Applications, dated October 24, 1996, at 5. Commencing on page 9 of the First Interim Applications, the Trustee details 20 discrete tasks he has undertaken since his appointment in pursuance of his fiduciary duties in these cases.

At a hearing held on the First Interim Applications at Utica, New York on November 14, 1996, the Court awarded the Trustee the interim sums of $210,000 in commissions and $6,000 for reimbursement of expenses. The Court reserved decision on the balance of the applications and indicated that it would review the First Interim Applications along with the objections filed by various parties in interest and the Trustee's Response and Supplemental Affidavit.

### ARGUMENTS

In addition to commissions sought in the First Applications totaling $1,394,350 plus expenses of $6,304.76, the Trustee seeks an ongoing monthly payment of a sum equal to 2.4% of the amounts disbursed each month and the use of a corporate credit card for the payment of certain expenses, all of which would be subject to review and adjustment by the Court upon subsequent fee Applications. In seeking such monthly amounts, the Trustee does not waive his right to seek the maximum commission allowable under Code § 326(a). The Trustee argues that such financial arrangements have been approved by bankruptcy courts in similarly complex cases relying upon Code §§ 330 and 331.

The UST objects to the First Interim Applications on several grounds, asserting initially that these Applications and all subsequent interim Applications of the Trustee should be subject to this Court's Order dated October 25, 1996, appointing a Fee Auditor. The UST also argues that the Applications do not comply with UST Guidelines for Reviewing Applications For Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 ("UST Guidelines"), specifically arguing that they are not supported by contemporaneous time records [2]; that the Trustee has failed to allocate his request for compensation between the various chapter 11 cases which have not been substantively consolidated; that the Trustee has failed to file amended statements pursuant to Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P.") 2014 and 2016(a), which should detail the parameters of the Trustee's em-

---

2. On November 12, 1996, the Trustee filed a Response to Objections to the First Interim Applications which has "Daily Time Descriptions" appended thereto.

ployment and compensation by C & L during the period covered by the First Applications; and that the Trustee has failed to explain why he initially applied for commissions of approximately $600,000 in early October 1996, in an application which was subsequently withdrawn, and now seeks more than double that amount in the First Interim Applications which cover only an additional two weeks in time.

The UST objects to the Trustee's instant request of 2.4% of cash disbursed and 1% of monies available for disbursement, suggesting that the request for a fixed percentage of funds disbursed is inappropriate in these cases which are a "hybrid" mix of both operating and liquidating chapter 11 cases and may well result in unjust enrichment. Further, the UST challenges the computation of Code § 326(a) commissions using funds on-hand.

Finally, the UST opposes any provision permitting the Trustee to receive monthly payments, arguing that courts should not permit a mechanical award of commissions, and that to do so would set a bad precedent by binding the estates to payment prior to establishing the value derived from the services of the Trustee. Further, such a procedure avoids the notice and hearing requirements of Code §§ 330 and 331 and raises very real questions as to the Trustee's ability to disgorge, if necessary, at the end of the case. With regard to advance reimbursement of expenses, the UST objects to the pre-authorization of expenses and also suggests that the Trustee should be required to relocate to the Syracuse, New York area to avoid weekly airline trips to his current residence in Connecticut or in the alternative be denied reimbursement for those airline expenses.

The SEC acknowledges the need for adequate interim compensation to attract highly qualified professionals in cases such as these, although it expresses concern over the amount sought by the Trustee herein at a relatively early stage of these cases.

While acknowledging that the Trustee has performed extensive and valuable services, the CC suggests that he be awarded only a "draw" or "advance" at this juncture. The CC counsels against fixing any percentage commission until the case has progressed well beyond its present stage, and further indicates that it has serious questions with regard to the manner in which the Trustee has calculated his present request. The CC characterizes the amount of interim compensation requested as "grossly excessive." Finally, the CC opines that the Trustee errs when he assumes that he is entitled to a maximum commission pursuant to Code § 326(a), pointing out that that section must be read in tandem with Code § 330.

The Banks' objections are relatively similar to those of the UST, though in addition they observe that the Trustee's compensation cannot be paid from funds that have been segregated pursuant to prior orders of this Court, which they argue are their collateral.

## DISCUSSION

Initially, the Court concludes that the Trustee's First Interim Applications filed pursuant to Code § 326(a) will not be subject to the Court's Order dated October 25, 1996, appointing a Fee Auditor. That Order was intended primarily to encompass the fee applications of professionals appointed pursuant to Code § 327 whose applications for compensation were to be filed pursuant to Code §§ 330 and 331. While the Court has recognized that an analysis of the Trustee's request for commissions is subject to much of the same scrutiny as that of a professional under Code § 330, see In re Rosen, 95 B.R. 11, 12 (Bankr.N.D.N.Y.1988), the Court chooses, at this juncture, to conduct a direct review of the Trustee's Applications.

■ Turning to the merits of the First Interim Applications, the Court believes that it would be inappropriate at this stage of these cases to make or withhold an award of compensation to the Trustee based upon the percentage of disbursements formula found in Code § 326(a). Case law supports the view that a trustee may be compensated in the early stages of the case without regard to a percentage of funds actually disbursed. See In re Heatherly, 179 B.R. 872 (Bankr. W.D.Tenn.1995): In re Stewart, 157 B.R. 893 (9th Cir. BAP 1993); In re Tom Carter En-

*ters.,* 49 B.R. 243 (Bankr.C.D.Cal.1985). As the 9th Circuit Bankruptcy Appellate Panel observed in *In re Stewart,* Code § 331 would be effectively written out of the Code *vis-a-vis* a chapter 11 trustee, if that trustee could be required to "wait 'years' for compensation, while all other professionals were paid on an interim basis." *Stewart,* 157 B.R. at 897 (citing *Tom Carter Enters.,* 49 B.R. at 245–46). The 9th Circuit Bankruptcy Appellate Panel concluded that a trustee could be awarded interim fees which are not dictated by a percentage of disbursements already made.[3] Thus the Court rejects the suggestion of the Trustee that he be compensated at this juncture either for past services or on a going forward basis utilizing a percentage of amounts he has allegedly disbursed.

■ The Court believes that in cases of this magnitude, a more appropriate method of awarding interim compensation to a trustee is to permit a monthly draw or advance award which will be monitored by requiring the trustee to file subsequent periodic fee applications in accordance with Code §§ 330 and 331, as well as the UST Guidelines and the Local Rules of this Court. Ultimately at the time of plan confirmation, or at such earlier time as the Court deems appropriate, the Court can apply the requirements of Code § 326(a) and make a final award of commissions.

The First Interim Fee Applications do not strictly comply with the UST Guidelines, though as indicated, the Trustee did subsequently provide contemporaneous time records attached to his Response To Objections, filed on November 12, 1996.[4] Rather than engage in a lengthy analysis of whether the UST Guidelines do or do not apply, the Court will require that all future applications of the Trustee seeking compensation comply with those UST Guidelines as well as the applicable Local Rules of this Court.

In response to the UST's Objection regarding lack of disclosure of compensation paid to the Trustee while in the employ of C & L, the Trustee suggests that the UST misreads Fed.R.Bankr.P. 2014 and 2016. He points to page 3 of his Interim Fee Applications that states C & L did not bill and will not bill the various chapter 11 estates for services rendered by the Trustee while in C & L's employ. Additionally, the Trustee will not share in any fees paid to C & L following his withdrawal from the firm. As to the precise amount of his compensation while employed by C & L, the Trustee references Fed.R.Bankr.P. 2016(a) which excepts from disclosure such compensation agreements when made between members of firms of lawyers and accountants.

■ The Trustee, while not responding to the observation of the UST that he previously sought and later withdrew a request for considerably less compensation for the same general period of time, has sought a "going forward" provisional fee award on a monthly basis equal to 2.4% of monies actually disbursed. Despite objection by the UST, the Court is of the opinion that such an arrangement, at least in concept, is equitable to the Trustee and creditors alike.

While admittedly any procedure that permits payment to a professional or a trustee in a bankruptcy case in advance of "notice and hearing" is somewhat at odds with the mandate of Code § 330, the so-called "Knudsen" doctrine does have application in very limited factual contexts. *See United States Trustee v. Knudsen Corp. (In re Knudsen Corp.),* 84 B.R. 668 (9th Cir. BAP 1988). Recognizing that the 9th Circuit Bankruptcy Appellate Panel found statutory solace for the procedure it approved in *Knudsen* in Code § 328(a) and also recognizing that Code § 328(a) does not reference employment of a Code § 1104 trustee, the Court finds no rea-

---

**3.** The Court also notes that on the hearing date of the First Interim Applications, there was some uncertainty expressed as to the actual amount of funds disbursed by the Trustee. To date that uncertainty has not been resolved.

**4.** It is not entirely clear that a Code § 1104 trustee is bound by the UST Guidelines, though the UST contends that a "clarification and Amendment regarding the Fee Guidelines" dated May 30, 1995 did in fact extend the Guidelines to both chapter 7 and chapter 11 trustees.

son to omit such a trustee from the general application of the *Knudsen* rationale.[5]

Clearly, this case meets the criteria established by the Bankruptcy Appellate Panel in *Knudsen* to determine whether advance payment was justified.[6] First, as indicated the case has been labeled the largest Ponzi scheme in United States history, with greater than 12,000 creditors owed in excess of $1 billion. Resolution of this matter has required the Trustee to continue to operate the business of both the Bennett and Aloha Debtors, expending more than 1,200 hours of work from the date of his appointments through the end of October 1996, and as a result he has allegedly collected over $100 million in assets. Second, the Court is convinced that requiring the Trustee to wait to receive payment in light of his full-time commitment to the administration of these cases to the exclusion of all other income sources would in fact impose an undue hardship not required by the Code. The Trustee cannot be expected to finance the reorganization of the various debtor entities, and the Court recognizes that expecting such a sacrifice would likely discourage qualified applicants from accepting the responsibility associated with being a trustee in large and extremely complex cases such as these. *See Knudsen*, 84 B.R. at 672.

The third factor considered by the *Knudsen* court presents a potential dilemma recognized by all of the parties, which is the issue of the Trustee's ability to disgorge in the event it is ultimately determined that his actual compensation exceeded the amount of commissions finally awarded under Code § 326(a). To date the Trustee has posted bonds in the sums of $25 million and $50 million in the Bennett cases and $25 million in the Aloha cases, and at this point the compensation paid to the Trustee does not begin to approximate that amount. Periodic review of the compensation hereinafter outlined, however, will serve to monitor the prospect of disgorgement and allow the Court to make any necessary adjustments to the amounts set forth below. Finally, the Trustee's proposal for payment of a provisional monthly fee has itself been noticed to creditors and the UST as required under the *Knudsen* rationale. *See Knudsen*, 84 B.R. at 672–73.

■ The Court now considers the amount of a provisional monthly payment to the Trustee under the circumstances of these cases. During the first six months of his appointment, the Trustee's time records reflect 1,244.5 hours of work, or an average of 207 hours per month. The Court assumes that the average number of hours per month will be somewhat reduced as the cases progress, though the Court acknowledges that Code § 326(a) commissions are not grounded exclusively upon the number of hours expended by the Trustee. While acknowledging the Trustee's assertion that his non-bankruptcy hourly rate was $540 per hour, the Court deems that a fixed provisional payment of $50,000 per month to the Trustee is an appropriate amount at this juncture in these cases. This amount computes to an hourly rate of approximately $250 if based on the average of 207 hours per month already expended on the cases by the Trustee, and while this amount, when viewed from an hourly perspective, is significantly less than the Trustee's non-bankruptcy rate, it is actually in line with the "blended rates" charged by other professionals appointed in these cases. Furthermore, the Trustee ultimately is not limited to these amounts, especially in light of Code § 326, which allows for some discretion in the award of compensation to a Trustee based on services provided and funds disbursed.

It appears to the Court that a more appropriate time to consider the Trustee's non-bankruptcy hourly rate, as well as his experi-

---

**5.** It is noted that both the CC and the SEC support payment of a reasonable monthly fee to the Trustee subject to periodic review by the Court after notice and a hearing.

**6.** The criteria included the following four factors: (1) the existence of an unusually large case with the accrual of an exceptional amount of monthly fees; (2). whether a delay of payment for an extended period would produce an undue hardship; (3) whether the court is convinced that any fees paid which are later determined to be not allowable are capable of being recovered; and (4) the fee retainer procedure is the subject of a noticed hearing prior to payment thereunder. *See Knudsen*, 84 B.R. at 672–73.

ence, background and performance, would be when an accurate analysis can be made of the amounts actually disbursed, which will likely occur later in time in these cases. Presently, the Court awards the Trustee the additional sum of $165,000 for services rendered from the respective dates of appointment through the end of 1996, which shall be allocated at 58% to the Bennett cases and 42% to the Aloha cases.[7] In addition, the $50,000 per month payment is effective as of January 1, 1997.

 Regarding advance payment of expenses, the Court agrees that the Trustee should be permitted the use of a credit card, and that the Trustee may incur monthly expenses not to exceed $3,500 per month pursuant to this Order, with said expenses being allocated to the respective group of cases in the same percentage as the provisional monthly payments. The Court also finds merit in the observation of the UST that the Trustee should minimize his travel expenses to and from his permanent residence. Such travel should be limited to one round trip per week, and the Court further directs that the Trustee find suitable permanent housing in the Syracuse area, which will result in a reduction in the lodging expense presently being incurred.

Finally, the Court directs that any compensation and expense reimbursement paid pursuant hereto be paid from otherwise unencumbered funds of the Debtors, and that within fifteen (15) days of the end of each three (3) month period commencing January 2, 1997, the Trustee shall file and notice in accordance with the Case Management Orders of this Court dated May 24, 1996 and June 24, 1996, respectively, an application for the approval of the actual compensation and expense reimbursement received by the Trustee during the prior three-month period (the first such application shall cover the period January 2, 1997 through March 31,

1997 and shall be filed and noticed not later than April 15, 1997).[8] Failure to file and notice such application as required herein shall result in an immediate suspension of all authority granted herein.

IT IS SO ORDERED.

---

7. This percentage is based generally on time records submitted by the Trustee for these Applications. As part of future applications, the Trustee shall provide, in addition to time records, a percentage allocation of his time in order to accurately assess the proper estates for time expended by the Trustee.

8. The Trustee must include in the initial quarterly application a request for reimbursement of expenses incurred between October 18, 1996 and December 31, 1996, as well as time records for this same time period, in support of the lump sum award made herein.