### In re THE BENNETT FUNDING GROUP, INC., Debtors.

### No. 96–61376.

United States Bankruptcy Court, N.D. New York.

Sept. 8, 2000.

---

Simpson, Thacher & Bartlett, Attorneys for the § 1104 Trustee, New York, William Russell, Of Counsel.

Wasserman, Jurista & Stolz, Attorneys for Official Committee of Unsecured Creditors, Millburn, NJ, Harry Gutfleish, Of Counsel.

Harter, Secrest & Emery LLP, Attorneys for Various Banks, Rochester, John R. Weider, Of Counsel.

Hancock & Estabrook, LLP, Attorneys for Various Banks, Syracuse, Stephen A. Donato, Of Counsel.

Green & Seifter, Pllc, Syracuse, Robert K. Weiler, Of Counsel.

Bond, Schoeneck & King, LLP, Syracuse, James D. Dati, Of Counsel.

Guy A. Van Baalen, Utica, Assistant U.S. Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Trustee in these consolidated cases, Richard C. Breeden, has filed a Fourteenth Interim Application for an Order Allowing Interim Compensation and Reimbursement of Expenses ("Fourteenth Application"). The Fourteenth Application, dated April 17, 2000, initially appeared on the Court's calendar on May 11, 2000 and was thereafter adjourned on consent to June 8, 2000 and finally to July 13, 2000.

On July 13th, the Court heard argument from the Trustee, the United States Trustee ("UST"), the Official Committee of Unsecured Creditors ("Creditors Committee"), as well as counsel for several bank creditors, both in support of and in opposition to the Fourteenth Application.

The focus of most of the objections was not on the Fourteenth Application *per se* but rather on the Trustee's request contained within the Fourteenth Application for a "Special Interim Fee Award" in such amount "as the Court determines to be fair and appropriate" ("special interim award").[1]

Following extensive argument, the Court reserved on the Trustee's request and indicated it would issue a written decision.

1. The Trustee previously requested a "special adjustment" of $500,000 in connection with his Eighth Interim Application. In its Memorandum–Decision dated February 11, 1999 ("February 11th Order") the Court awarded the Trustee a "one time payment of $285,000."

2. On July 12, 2000 the Trustee filed, by facsimile transmission, a Response of the Trustee

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction of the parties and the subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A).

## FACTS AND ARGUMENTS

On January 9, 1997, this Court issued a Memorandum–Decision, Findings of Fact, Conclusions of Law and Order ("January 9th Order"), which established a procedure whereby the Trustee of these consolidated cases was to be compensated during their pendency. See *In re Bennett Funding Group, Inc.*, 213 B.R. 227 (Bankr.N.D.N.Y. 1997). Pursuant to that Order, the Trustee was to receive the sum of $600,000 annually ( $50,000 per month ) plus out of pocket expenses not to exceed $3500 per month, which compensation was then subject to the Trustee filing quarterly applications for review by creditors and approval by this Court. Since the January 9th Order, the Trustee has been compensated pursuant to its terms.

The Trustee argues in support of his request for a special interim award that as of April 17, 2000 he has collected $564,862,004 in cash for creditors and has disbursed as of that same date $500,144,196.[2] He points out that unsecured creditors will have actually received $180,000,000 upon completion of a third interim distribution. These distributions to the unsecured creditors, all of which have been made pursuant to various Orders of the Court, represent an average of $.225 on the dollar to date. In addition, bank creditors who have settled their litigation with the Trustee have been paid $154,748,488[3] while unsecured vendor creditors have been paid $41.8 million;

to the Creditors Committee, U.S. Trustee and Bank Replies to Trustee Submissions ("Trustee's Response") in which he updated the cash collected to $574,709,433 and the cash disbursed to $507,127,832.

3. The Trustee's Response also updated the total cash disbursed to the settled banks, indicating a new figure of $156,211,723.00.

$14.5 million has been paid to taxing authorities, $18.7 million has been paid in operating expenses and $44.4 million disbursed for all types of professional fees (See Fourteenth Application at pages 3, 10–12).

The Trustee forecasts that by December 31, 2000 collection of various remaining lease streams will have been completed, bringing in an additional $4.4 million dollars, while non-lease assets such as the "Speculator" gaming vessel and a partnership interest in the "Rising Sun Casino" project represent a potential recovery of approximately $10 million. Finally the Trustee anticipates recovering "several million dollars" from Patrick Bennett personally.

The only assets of significance then remaining will be the consolidated estates' stock interest in Equivest, Inc. and pending litigation recoveries whose value is too uncertain to predict at the present time.

In support of his special interim award, the Trustee opines that the collection of assets phase of the case is largely complete and virtually all of the various groups of creditors have received a substantial portion of the distributions that they are going to receive. One of the groups that has received significant payment of its claims are the Court appointed professionals. The Trustee asserts that these professionals, excluding himself, have been paid no less than 80% of their actual billings while he has been paid approximately 17% of the maximum compensation he would be entitled to pursuant to 11 U.S.C. § 326(a). On an hourly basis he contends that he has rendered services over the past 4½ years at the paltry rate of $244 per hour. Finally the Trustee recognizes that any special interim award is within the Court's discretion but observes that "[a]t some point justice delayed is justice denied and even a large payment many years into the future cannot compensate for lost income during the intervening years." (See Fourteenth Interim Application at page 18, footnote 17.)

Various parties in interest oppose the Trustee's request for a special interim award. The UST registers several objections, asserting that the Trustee failed to give adequate notice of the requested award by including it in his Fourteenth Application rather than making a separate application. Substantively, the UST disputes the Trustee's contention that he has disbursed $500 million plus to date, asserting that the monies collected on the so-called lease portfolios of both the settled and non-settled banks cannot be included in the Code § 326(a) analysis citing case law for "the premise that constructive possession of encumbered assets held by the estate but then turned over to the secured creditor are not to be included in the measuring rod for § 326 compensation" (See Objection of the UST to the Fourteenth Interim Application dated May 24, 2000 at ¶ 32). The UST makes a similar argument with regard to the $125 million plus settlement with the Italian insurer, Generali Assicurazioni, asserting that those proceeds were passed through the bankruptcy estate simply to enhance the § 326(a) analysis. The Creditors Committee, while also making reference to the "disbursement" issue, points to the Trustee's prior request for a "one time special advance", his incomplete performance as of the date of the current request, his inflexible and aggressive posture taken with respect to the so called "non-settled banks" and the remaining unliquidated assets as reasons for the Court to deny the special interim award. Attorneys for several of the so-called non-settled banks also filed objections to the special interim award, reiterating many of the same objections expressed by the UST and the Creditors Committee, in particular, the assertion that the Trustee's definition of "disburse" as utilized in Code § 326(a) is erroneous.

## DISCUSSION

■ This Court in its February 11th Order considered essentially the identical issue presented by the instant contested

matter, to wit: is a Chapter 11 trustee entitled to what amounts to an advance on the compensation to be ultimately awarded at the conclusion of the case pursuant to Code § 326(a)? The Court need not re-state its discussion in the February 11th Order, nor does it see any reason to alter the legal conclusion reached in the Order. Clearly, however, facts and circumstances have changed significantly in the eighteen plus months since the Court entered its February 11th Order. The Trustee alleg-es that he has collected an additional $181,000,000 and disbursed to creditors an additional $194,500,000. The Trustee as-serts that the non-litigation liquidation phase of this case has largely been con-cluded. He also argues that all of the other professionals have already been paid significantly higher percentages of their requested compensation.

■ The thrust of the Trustee's current request for a special interim award is what he considers to be the relative unfairness of his compensation to date when com-pared with that of other professionals in the case.[4] He also points to the sums distributed to pre-petition creditors in gen-eral, comparing his compensation to what he could have earned had he committed the same number of hours to private pur-suits. The Trustee argues that assuming he makes no further disbursement of funds and that he is awarded a full 3% (the maximum allowed pursuant to Code § 326(a)) of all of the funds disbursed as of the date of the Fourteenth Application, he would be entitled to compensation of $15,004,326, by his estimate some $12.4 million more than he has been paid to date.[5] While at first blush the Trustees arguments are very compelling, the road to this point in the Bennett saga has been

plagued by numerous detours which are alleged by several parties in interest to be the direct result of the Trustees actions. As the Court indicated, however, in it's February 11th Order at footnote 5, "The Court agrees with the Trustee that his request for a special adjustment should not 'become a vehicle for debating the final award to the Trustee.'"

Perhaps one of the most oft-repeated and significant criticisms of the Trustee's conduct is the allegation that the so-called bank settlements, as well as the Generali insurance settlement, were crafted solely for the purpose of unnecessarily moving monies through the Debtors' estate on which the Trustee's Code § 326(a) com-pensation would be calculated. This dis-pute is going to command a final answer from this Court at some point, but for purposes of the instant special interim award it need not be determined. Addi-tionally, the Court does not consider herein other issues raised by the various respondents such as the appropriate defi-nition of "disbursed" as used in Code § 326(a). These issues will be preserved for final determination at a later time.

The Court sees no reason to digress from the approach adopted in its February 11th Order and awards the Trustee the maximum compensation allowable under Code § 326(a) applied, however, only to the monies actually distributed to the unsecured investor creditors. According to the Trustee's Application, through the third interim distribution those unsecured creditors have received $180,000,000, 3% of which is $5,400,000. To date the Trustee has been paid $2,760,000 thus the Court

4. While the February 11th Order referred to a "one time payment", the Court believes that its acceptance of some type of estoppel argu-ment under the circumstances of this Chapter 11 case would be grossly unfair and an inap-propriate exercise of its discretion.

5. To date, the Trustee has been authorized through various Court Orders payment of

$2,760,000 which amount includes the regu-lar compensation sought in the within Four-teenth Application as well as the amount au-thorized for payment in connection with the Trustees Fifteenth Interim Application ap-proved pursuant to an Order of the Court dated August 21, 2000.

shall approve a special interim award of $2,640,000.[6]

Based on the foregoing, it is hereby

ORDERED that the Trustee's request for a special interim award, as set out in his Fourteenth Application, is granted in the sum of $2,640,000, to be paid from otherwise unencumbered funds of the Consolidated Estate and credited against any amount finally awarded to the Trustee pursuant to Code § 326(a); and it is further

ORDERED that the balance of the Fourteenth Application is approved subject to the rights of parties in interest to renew their objections at the time the Trustee seeks a final award of compensation pursuant to Code § 326(a).

6. In approving the special interim award utilizing the maximum percentage allowable under Code § 326(a) the Court does not intend to convey the impression that such a percentage will necessarily be applied to the final award of compensation.