**In re MARINER POST–ACUTE NETWORK, INC., et al., Debtors.**

**Mariner Health Group, Inc., et al., Debtors.**

**Nos. 00–113 (MFW) through 00–214 (MFW), 00–215 (MFW) through 00–301 (MFW).**

United States Bankruptcy Court, D. Delaware.

Nov. 16, 2000.

Mark D. Collins, Deborah E. Spivack, Margreta Sundelin, Richards Layton & Finger, P.A., Wilmington, DE, Isaac M.

Pachulski, Jeffrey H. Davidson, Marina Fineman, Stutman Treister & Glatt, P.C., Los Angeles, CA, for debtors.

Laura Davis Jones, Bruce Grohsgal, Pachulski Stang Ziehl Young & Jones, Wilmington, DE, for Official Committee of Unsecured Creditors.

Daniel K. Astin, Maria D. Giannarakis, Office of United States Trustee, Philadelphia, PA.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtors' Motion for Order Modifying Procedures for Interim Compensation and Reimbursement of Expenses and the United States Trustee's Objection thereto. For the reasons set forth below, we grant the Motion.

## I. FACTUAL BACKGROUND

On January 18, 2000, Mariner Post–Acute Network, Inc., and several of its affiliates ("MPAN") and Mariner Health Group, Inc., and several of its affiliates ("MHG") (collectively "the Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. By Order dated January 18, 2000, the cases are being jointly administered under case numbers 00–113 (for the MPAN Debtors) and 00–215 (for the MHG Debtors).

Early in these cases, the Debtors filed motions to approve procedures for the compensation of professionals. The motions were not opposed by the United States Trustee's Office ("the UST"). The Order granting the Motions ("the Fee Procedures Order") provided that professionals are authorized to file fee applications on a monthly basis. If no objections are filed to the monthly applications, the applicants may certify no objection, and the

Court can review and grant the applications without need for a hearing.

On July 7, 2000, the Debtors filed the instant motion seeking a modification of the Fee Procedures Order. Specifically, the Debtors seek approval of the following procedure ("the Modified Compensation Procedure"): Professionals may serve (but not file) monthly fee statements upon all other parties in interest in the case, including the UST. If no objections are raised by any party in interest within twenty days of service, the Debtors would be required to pay 80% of the fees and 100% of the expenses requested in the monthly fee statements. If objections are raised, the parties would attempt to resolve them. If they are unable to reach an accord, the applicant can either seek approval from the Court of all fees requested or elect payment of only 80% of the uncontested fees at that time. [2]

The Modified Compensation Procedure also requires the professionals to file with the Court quarterly interim fee applications which seek approval of the previous three months' fee statements. On approval of the fee applications, the Debtors would be required to pay all fees allowed, but not yet paid.

## II. JURISDICTION

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 1334 and 157(b)(1), (b)(2)(A), and (O).

## III. ARGUMENT

The UST objected to the Motion for approval of the Modified Compensation Procedure on two grounds: (1) law of the case precludes the modification, and (2) the Modified Compensation Procedure violates the provisions of section 331 of the Bank-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Rule 9014.

2. In other words, if the professional sought $100 in fees and received objections to $10, it would still be permitted to receive payment of $72 (80% of $90).

ruptcy Code. For the reasons set forth below, we overrule the UST objections and grant the Debtors' Motion.

### A. Law of the Case

■ The law of the case doctrine "limits the extent to which an issue will be reconsidered once a court has made a ruling on it" in a particular case. *See, e.g., Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir.1994). The UST argues that we should not reconsider our prior decision under the law of the case doctrine because the Debtors have not demonstrated the "exceptional circumstances" that the Third Circuit has articulated as necessary: "such as where there has been an intervening change in the law, where new evidence has become available, òr where reconsideration is necessary to prevent clear error or manifest injustice." *Al Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601 (3d Cir.1997).

■ The UST's argument is without merit because the law of the case doctrine does not apply in this case. That doctrine applies only to substantive rulings by the Court. *See, e.g., In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 746–47 (Bankr. N.D.Tex.1988). It does not apply to procedural or administrative orders which the Court always retains the ability to modify.

■ The Fee Procedures Order was an administrative order which merely specified procedures for the filing and allowance of fee applications in these jointly administered cases. It was not a judgment or order entered in a contested matter. In fact, it was entered on the first day of this case without notice to any party in interest other than the UST. Such administrative, procedural orders are always subject to modification by the Court, either *sua sponte* or on motion of any party. *See, e.g., Sill Corp. v. United States*, 343 F.2d 411, 420 (10th Cir.1965) (amending pretrial order); *Winn–Senter Constr. Co. v. Healy Enter.*, No. 90–2173–0, 1992 WL 97764, at *2 (D.Kan. April 30, 1992) (pretrial orders "may always be modified in the interest of the administration of justice").

### B. Section 331

The UST argues that section 331 of the Bankruptcy Code precludes approval of the Modified Compensation Procedure requested by the Debtors. That section provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

#### 1. Section 331 permits monthly payment of professional fees

■ While section 331 expresses the normal rule that interim fee applications may be filed only once every 120 days, it expressly permits the Court, in appropriate circumstances, to permit fee applications to be filed more often. Courts have generally recognized that in large cases it is appropriate to allow payment of professionals more frequently. *See, e.g., In re Bennett Funding Group, Inc.*, 213 B.R. 227, 232 (Bankr.N.D.N.Y.1997); *In re Kaiser Steel Corp.*, 74 B.R. 885, 892 (Bankr. D.Colo.1987). A 1992 guide to managing bankruptcy mega-cases which was produced by the Federal Judicial Center noted the unique pressures that large bankruptcy cases place on professionals: "In a large case, it is likely that the professionals appointed under section 327 are investing huge quantities of time, and therefore

receiving payment only once every four months may impose an intolerable burden on them and may place them at a significant economic disadvantage to the professionals retained by the creditors." S. Elizabeth Gibson, *A Guide to the Judicial Management of Bankruptcy Mega–Cases,* 18 (1992).

The pressures are felt not only by the professionals, but also by debtors. Debtors often prefer a monthly payment schedule for professional fees in order to permit them to better manage their cash flow. Such arrangements should also abrogate the necessity to pay large pre-petition retainers to debtors' professionals thereby assuring that debtors will be in a better financial condition at the beginning of the reorganization process. Further, requiring monthly payment of professional fees may alert the parties, and the Court, to an administratively insolvent debtor earlier than in the case where fees are allowed and paid less frequently.

The UST does not argue that larger cases do not warrant more frequent allowance and payment of professional fees. In fact, by agreeing to the original compensation procedures, which permit the filing of monthly fee applications, the UST acknowledged that the size of these cases warranted payment of professional fees on a monthly basis. However, the UST asserts that before any fees can be allowed and paid section 331 requires: (1) the filing of a formal fee application, (2) notice and a hearing, and (3) review by the Court.

### 2. *Formal fee application*

■ To permit adequate review to determine if the services performed by a professional are necessary and the fees requested reasonable, the professional must file a detailed fee application. As stated by the Court of Appeals for the Third Circuit: "We do not doubt the applicant's duty to submit fee applications with enough detail to enable the court to reach an informed decision—one necessarily grounded in complete, coherent information—as to whether the requested compensation is justified." *In re Busy Beaver Bldg. Ctr., Inc.,* 19 F.3d 833, 845 (3d Cir. 1994).

■ The Modified Compensation Procedure does provide for the preparation of detailed monthly fee statements, as well as the filing of similarly detailed fee applications on a quarterly basis. Thus, the proposed procedure complies with the requirements of the Code for sufficient detail of the services rendered to permit review and evaluation by the other interested parties in the case and the Court.

### 3. *Notice and a hearing*

■ The UST asserts that section 331 requires that, before any fees are paid, there must be notice and a hearing. However, the Code specifically provides that where a "notice and a hearing" is required by the Code, only "such notice and opportunity for a hearing as is appropriate in the particular circumstances" is required. That is, an act may be taken without an actual hearing, if a hearing is not timely requested by a party in interest. 11 U.S.C. § 102(1)(A). The legislative history of section 102 notes that "[t]his is a significant change from present law, which requires the affirmative approval of the bankruptcy judge for almost every action. The change will permit the bankruptcy judge to stay removed from the administration of the bankruptcy or reorganization case, and to become involved only when there is a dispute about a proposed action, that is, only when there is an objection." S.Rep. No. 989, 95th Cong., 2d Sess. 27–28 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5813.

■ In this case, the Modified Compensation Procedure provides notice and an opportunity for a hearing, in several ways. First, on receipt of the monthly fee statement, a party may object and, if the objection is not consensually resolved, then the applicant may request a hearing or the disputed fees will not be paid. Second, the Modified Compensation Procedure re-

quires that fee applications be filed with the Court and noticed for a hearing on a quarterly basis. If an objection is filed, a hearing will be held to consider approval of the fees paid in the previous quarter. Thus, we conclude that the "notice and hearing" requirements of section 331 have been met by the Modified Compensation Procedure.

### 4. *Prior court approval*

The UST asserts that the Modified Compensation Procedure violates section 331 because it permits payment of professional fees before the Court has actually approved those fees. The Debtors argue that section 331 does not require *prior* Court approval, only that the Court *ultimately* approve the fees. Since the Modified Compensation Procedure provides for Court approval of all fees and expenses on a quarterly basis, the Debtors argue that the Modified Compensation Procedure should be allowed. There is a split of opinion on this issue.

The UST cites several cases to support its position that prior Court approval of compensation is necessary before payment may be made. *See, e.g., In re Commercial Fin. Serv., Inc.*, 231 B.R. 351, 356 (Bankr.N.D.Okla.1999) (section 331 does not authorize payment of professional compensation until court reviews and allows disbursement); *Commonwealth of Pennsylvania, Dep't of Labor and Indus.*

*v. Cunningham & Chernicoff, P.C., (In re Pannebaker Custom Cabinet Corp.)*, 198 B.R. 453, 458 (Bankr.M.D.Pa.1996)(same); *In re Perrysburg Marketplace Co.*, 176 B.R. 797, 799 (Bankr.N.D.Ohio 1994) (same); *In re Genlime Group, L.P.*, 167 B.R. 453, 455 (Bankr.N.D.Ohio 1994)(same). *See also, In re Pacific Forest Indus., Inc.*, 95 B.R. 740, 745 (Bankr. C.D.Cal.1989) (post-petition retainer payments to debtor's counsel are fundamentally at odds with sections 330, 331 and 503).

A number of cases permit professionals to receive conditional interim payments, subject to later review by the Court. The leading case supporting this position is *In re Knudsen Corp.*, 84 B.R. 668 (9th Cir. BAP 1988). *See also, In re Bennett Funding Group, Inc.*, 213 B.R. at 232 (conditional interim payments to professionals, subject to disgorgement, may be permitted in limited factual contexts); *In re W & W Protection Agency, Inc.*, 200 B.R. 615, 620 (Bankr.S.D.Ohio 1996) (conditional interim payments, subject to disgorgement, may be permitted in large cases); *In re Dandy Lion Inns of America*, 120 B.R. 1015, 1017–18 (D.Neb.1990) (section 328 permits courts to approve a procedure which allows professionals to receive conditional interim payments, subject to disgorgement, in large cases, but the bankruptcy court failed to consider whether the facts of the case warranted such a procedure).[3]

---

**3.** At least one Bankruptcy Court has issued a Standing Order which permits the payment of fees prior to Court approval in large cases. *See, e.g.,* General Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses and attached Monthly Fee Order (Bankr.S.D.N.Y. January 24, 2000), *available at* http://www.nysb.uscourts.gov/orders/m219.pdf.

The local office of the UST (Region 3) is the sole objector to the Debtors' motion. At least two other regional offices of the UST support interim payments to professionals, where appropriate. In *California Webbing Indus., Inc.*, No. 00–11116–ANV (Bankr.D.R.I.), the UST for Region 1 endorsed a similar fee procedure.

Additionally, in its Guide to Applications for Employment of Professionals and Treatment of Retainers, the UST for Region 16 includes a section specifically detailing the procedures for drawing against post-petition retainers. That section, titled "Accounting for Services Covered by a Retainer," permits professionals who have received pre-petition or post-petition retainers to submit monthly fee statements on notice to all of the appropriate parties, the professionals may withdraw funds from trust accounts without any notice or hearing, unless an objection to those fee statements is timely filed and served. *See* Office of the United States Trustee, Guide to Applications for Employment of Professionals and Treatment of Retainers, *available at*

In *Knudsen*, the Court was faced with a question identical to that posed here: whether the bankruptcy court has the authority to approve a procedure to permit debtors to make conditional monthly postpetition payments of professional fees without prior Court approval of those payments. *Id.* at 670.

The *Knudsen* analysis began with section 328, which provides, in relevant part:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (1993). The *Knudsen* Court analogized the conditional monthly payment of professional fees to a rolling retainer agreement. While the professionals are permitted to receive payment every month, the professional fees are not allowed until after a formal fee application is filed, parties have had the opportunity to object, the court has reviewed the application and the fees have been approved. *Id.*

The *Knudsen* Court suggested there are a number of procedures which could be adopted to ensure that, if fees are later denied, those monies may be recovered: professionals may receive interim payments which are only a percentage of the amount billed; professionals can post a bond covering any possible disallowance; counsel's financial position can be evaluated to assure that any reassessment can be repaid; or funds paid prior to Court approval can be held in trust until a final or interim fee allowance is made. *Knudsen*, 84 B.R. at 672.

 Section 329(b) expressly provides that the Bankruptcy Court may order the disgorgement of any fees paid to a professional where it is ultimately deter-

mined that the payment was excessive. Of course, all professional fees which are paid under sections 328, 330 or 331 are subject to the Bankruptcy Court's inherent authority to order disgorgement. *See In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995) (bankruptcy court has "broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings [which] empowers the bankruptcy court to order disgorgement"); *Busy Beaver*, 19 F.3d at 841 ("bankruptcy courts have an inherent obligation to monitor estates and serve the public interest"); *In re Levin*, No. 97–15574DWS, 1998 WL 732878, at *3 (Bankr.E.D.Pa. Oct. 15, 1998)("The ability to deny compensation and order the disgorgement of funds is part of a bankruptcy court's inherent authority to regulate professional compensation and protect bankruptcy estates").

The *Knudsen* Court limited its procedure for payment of fees before court approval to those cases where the following criteria are met:

1) The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

2) The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

3) The court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above; and

4) The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Id.* at 672–73.

 We agree with the rationale and conclusion of the *Knudsen* decision that section 328 permits a court to approve a procedure which allows monthly conditional interim payments to be made to a professional without prior Court approval, subject to later review and disgorgement.

The phrase "without prior Court approval" refers only to the specific monthly payment. Before any monies are paid to any professional, the Court must approve the procedure which allows professionals to receive a conditional payment. Even then, those payments are conditional and the Court retains the right to later disallow payment of those fees or expenses during its review of the formal fee application and, consequently, the Court may order disgorgement of any fees which were improperly received. Further, as noted above, the Court always retains the power to modify such a procedure if it later proves unworkable or improvident.

■ However, we decline to limit our holding to cases which meet the *Knudsen* four-prong test, because we recognize that there are other factors which may be relevant, including whether other fee arrangements would impose a hardship on the debtor. We recognize that many debtors may prefer the conditional payment of professional fees on a monthly basis as more consistent with their cash flow needs and in order to permit the debtor to monitor and control its administrative costs. Another factor we consider relevant is the effect of the proposed procedure on the ability of the Court to adequately review professional fee applications. In large cases, it is often difficult for the Court to assess whether services rendered by a professional were necessary or performed within a reasonable time when the Court only has one month's worth of time to review. The Court often has to review several months of fee applications to determine whether a specific task was performed in a reasonable amount of time and provided a benefit to the estate. Thus, quarterly fee applications make it easier for the Court to perform this function.

We also find that there may be other important factors which we have not specifically enumerated here, including the payment arrangement's economic impact on the debtor's ongoing business operation, the ability of the debtor to reorga-

nize, or the reputation of debtor's counsel. *See In re Jefferson Bus. Ctr. Assoc.*, 135 B.R. 676, 679 (Bankr.D.Colo.1992).

■ In any case in which the party seeks to receive an interim payment of fees, it must seek Court approval of the procedure in advance. The professional has the burden to show that the proposed procedure is appropriate in the context of each case. *In re Dividend Develop. Corp.*, 145 B.R. 651, 656 (Bankr.C.D.Cal.1992).

■ There must also be some assurance that any fees which are subsequently disallowed are available for disgorgement. We conclude that, in the absence of posting a bond covering any possible disgorgement or placing those funds paid prior to Court approval into a trust account until a final or interim fee allowance is made, any professional paid under such a procedure may receive only a percentage (normally no more than 80%) of the fees requested which are not subject to an objection by any party in interest.

■ The Modified Compensation Procedure proposed in these cases meets the criteria, as outlined above. The cases are large, involving over 180 separate but jointly administered Debtors. The Debtors' annual revenue for 1999 was in excess of $2.8 billion. Given the large amount of fees incurred in this case (over $7 million for the first eight months of the case), we are convinced that waiting an extended period for payment would place an undue hardship on the professionals. While no arrangement for a trust fund or bond has been made, we are satisfied that payment of only 80 percent of professional fees (together with quarterly review of formal fee applications) will reasonably ensure that any fees subsequently denied will be recoverable by the estate. Finally, the proposed fee procedure has been subject to notice and a hearing prior to its approval. Given the holdback of 20% of the fees requested, the requirement of quarterly fee applications for review by the Court, and the probability that this case will last a

substantial time, we are convinced that there are ample opportunities for review of the fees paid and a reasonable assurance that any fees disallowed will be recoverable by the estate. We, therefore, approve the Modified Compensation Procedures.

## IV. *CONCLUSION*

For the reasons set forth herein, the Debtors' Motion for Order Modifying Procedures for Interim Compensation and Reimbursement of Expenses is approved.