**In re PITTSBURGH CORNING CORP., Debtor.**

**Bankruptcy No. 00–22876–JKF.
Motion No. RSSM–1.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 10, 2000.

Paul M. Singer, Douglas Cameron, Reed, Smith Shaw & McClay, LLP, Pittsburgh, PA, for Debtor.

Donald E. Seymour, Kerkpatrick & Lockhart, Piitsburgh, PA, for PPG Industries, Inc.

David W. Lampl, Leech, Tishman, Fuscaldo & Lampl, LLC, Pittsburgh, PA, for Official Committee of Unsecured Trade Creditors.

Douglas Campbell, Campbell & Levine, LLC, Pittsburgh, PA, Philip Milch, Pittsburgh, PA, Local Counsel for Official Committee of Unsecured Asbestos Creditors.

Amy Tonti, Klett, Rooney, Lieber & Schorling, Pittsburgh, PA, for Corning, Inc.

Joseph Fornari, Pittsburgh, PA, U.S. Trustee.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the court is the U.S. Trustee's objection to the Debtor's motion for an administrative fee order.[2] Hearings were held on June 26, 2000, July 7, 2000, and November 3, 2000. At the hearing on July 7, the court approved, on a trial basis, an agreement between the professionals and the U.S. Trustee whereby the professionals agreed to file monthly fee applications, through coordination with Debtor's counsel who would collect, notice and file the applications. The court would hold monthly fee hearings. At the hearing on November 3, 2000, the court announced on the record its decision to discontinue the monthly fee hearing process inasmuch as it is uneconomical, inefficient and burdensome[3] to the parties and the court. The U.S. Trustee does not argue with the provisions in the administrative order for monthly notice and service of fee requests but objects to monthly payment of fees in

---

1. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

2. The Asbestos Committee filed an objection relating to confidentiality concerns posed by the detailed time records required to be submitted in fee applications. This objection has been resolved by the parties and is no longer at issue.

3. In *In re Ameriserve Food Distribution, Inc., et al.*, 00–358(PJW)(Bankr.D.Del.), Docket No. 1181, the U.S. Trustee filed a motion to appoint a fee auditor. In that motion the U.S. Trustee relates that the court had entered an Amended Administrative Order authorizing

professionals to file monthly fee applications which would be served on the debtors, the U.S. Trustee, counsel to the creditors' committee, and parties requesting notice. If no objections were filed to a fee petition, debtors were authorized to file a certification of no objection and, if the court had no objections, the court would authorize the debtors to pay the fees *without* a holdback. In its motion the U.S. Trustee acknowledges that "District-wide implementation of the administrative Order has had the salutary effect of ensuring Court review of interim fee applications, but it has *proven procedurally burdensome.*" *Id.* at 3 (emphasis added).

accordance with the administrative order.[4] No creditor, including Debtor's lender, objects to the process.

### The History of the Administrative Order Process in the Western District of Pennsylvania

Since at least 1985, administrative fee orders have been used by every bankruptcy judge in this district in certain cases where, due to the size of the debtor, the complexity of the issues, the expected longevity of the case, and/or other factors peculiar to the particular case, the court has found that (1) requiring professionals to wait the 120 days provided in § 331 before receiving some payment of fees would impose an undue financial burden on the professionals and (2) the risk of accumulation of large administrative claims is significant and is reduced by the procedure provided in the administrative fee order, thereby assisting the plan confirmation process.[5] The administrative fee order permitting monthly payment of undisputed fees subject to quarterly review and hearing by the court eases the financial burden on the professionals while assisting the debtor with its cash flow. It also eases the administrative burden on the court that results when fee applications in large or complex cases must, in the interests of justice, otherwise be heard monthly. In addition, quarterly rather than monthly review of fee applications by the court gives the court a better sense of the progress and direction of the case as well as a better framework for the necessary determination of whether or not the fees requested are reasonable and were incurred for actual and necessary services. 11 U.S.C. § 330(a)(1)(A).

The administrative fee order provides that professionals may submit monthly bills for services and expenses to the Debtor which contain sufficient detail to comply with Local Bankruptcy Rule 9016.1. The monthly bill is circulated to committee chairpersons[6] and the U.S. Trustee and the other entities on the Service List as approved by this court and modified from time to time. The Chief Financial Officer of the Debtor and the committee chairpersons review each bill and within ten days of receiving the bill file a certificate with the clerk of the bankruptcy court and serve a copy on the professional involved and the service list, if any. The certificate states in full:

> The monthly bill of $_____ for the month of _____, for fees of $_____ and expenses of $_____ has been reviewed by me and I approve it in full—or—I approve the fees to the extent of $_____ and object to the balance.
>
> Dated: _____   _____
> Committee Chairperson or CFO

The administrative order provides, and the certificate reflects, that after the filing of the certificate the Debtor is to pay 80 percent of undisputed fees and 100 percent of expenses to the applicant. At the close of each calendar quarter all professionals must file and serve their fee applications and a hearing is noticed. At the hearing,[7]

---

4. The U.S. Trustee's written objection raises a host of complaints. The only one that the U.S. Trustee has argued at the hearings before the court is that addressed in this Memorandum Opinion.

5. 11 U.S.C. § 1129(a)(9) provides that § 507(a)(1) administrative expenses including professional fees unpaid as of the confirmation date must be paid in full on the plan effective date unless the holder of the claim agrees to a different treatment.

6. Depending on the case, other parties in interest may also receive the monthly bills for review.

7. Depending on the case, the hearing is held on notice to all creditors or to a specified service list. In cases such as *Pittsburgh Corning* where there are in excess of 200,000 known creditors, many of whom are asbestos plaintiffs, notice goes to a specified service list which encompasses committees, other representative groups, those who have requested notice and the court has ordered to be added to the service list and, of course, the U.S. Trustee. As a matter of practice, if no objections to the fee applications have been filed, the court, in its discretion, may cancel the hearing and enter the order after reviewing

objections, if any, are addressed and an order is entered requiring payment of the balance of allowed fees.[8]

We note that the Bankruptcy Court for the Southern District of New York has adopted a general order approving a fee procedure virtually identical to that at issue herein. The General Order, dated January 24, 2000, is applicable to "all Monthly Fee Orders filed." Our research has revealed no published cases challenging the General Order.[9] Similar orders have been used[10] in the Bankruptcy Court for the Northern District of California (*In re Tri Valley Growers,* Case No. 00–44089J); the Bankruptcy Court for the Southern District of Texas (*In re Perry Gas Companies, Inc., et al.* Case Nos., 00–37884–H5–11, 00–37885–H5–11, 00–37886–H5–11, jointly administered); the Bankruptcy Court for the Southern District of Ohio (*In re Roberds, Inc.,* Case No. 00–30194); the Bankruptcy Court for the Northern District of Illinois (*In re Allied Products Corporation,* Case No. 00 B 28798); the Bankruptcy Court for the District of Nevada (*In re Pegasus Gold Corporation,* Case No. 98–30088) (Order entered granting Motion to Approve Stipulation Regarding Payment of Committee Expenses by Unsecured Creditor's Committee, Docket No. 539);[11] the Bankruptcy Court for the District of New Jersey (*In re The Claridge at Park Place,* Case No. 99–17399; *In re Greate Bay Hotel and Casino, Inc.,* Case Nos. 98–10001/ JHW through 98–10003);[12] the Bankruptcy Court for the Southern District of Indiana (*In re Paul Harris Stores, Inc.,* Case No. 0012467–BHL–11, Motion No. 100, Order No. 219); the Bankruptcy Court for the Eastern District of Virginia (*In re Landbank Equity Corp.,* Case No. 85–01541–N; *In re Freedlander, Inc.,* Case No. 88–00794–RS). *See also In re Bennett Funding Group, Inc.,* 36 BCD ¶ 236 (Bankr.N.D.N.Y.2000)(chapter 11 trustee was awarded "special interim fees" through a procedure by which he was to receive $50,000 per month plus expenses up to $3,500 per month subject to quarterly fee applications and court approval).

### The U.S. Trustee's Objection

The U.S. Trustee asserts in its response to the motion that it has no objection "*per se,* to the generalized nature of the relief sought" but considers the administrative order to be violative of § 330 and § 331 of the Bankruptcy Code because fees are to be paid monthly before the quarterly fee hearing and entry of an order. *See* "Objection of the United States Trustee to the Motion of the Debtor for Administrative

---

the fee applications but without having held the scheduled hearing.

**8.** Sometimes the order allowing interim fees requires another holdback of ten percent of the balance of the allowed fees until the end of the case. In the matter before us all fees approved at the interim fee hearings will be authorized to be paid inasmuch as Debtor has significant assets and positive cash flow and there is no reason necessitating a second holdback.

**9.** We also note that in *In re California Webbing Industries, Inc.,* Case No. 00–11116–ANV, (Bankr.D.R.I.), the U.S. Trustee filed an "Amended Omnibus Statement Regarding Interim Fee Applications Submitted by Debtor and Committee Professionals" in which the U.S. Trustee stated that "[t]he Court should authorize the Debtor to pay 80% of the requested Professional fees 'on account' and subject to later disgorgement, pending the Court's determining, at the conclusion of the case, that the Professionals' services … benefitted the estate." *Id.* at ¶ 11.

**10.** This information is taken from the dockets of the courts that entered the orders. This court takes judicial notice of the dockets. Fed.R.Evid.201.

**11.** This order allowed Committee members to submit monthly written expense reimbursement requests to the debtors with a copy to the U.S. Trustee. If a party in interest objects and the parties cannot resolve the dispute, the objected to portion is addressed at "the next regularly scheduled hearing held to consider" professionals' fee applications.

**12.** New Jersey is served by the U.S. Trustee for Region 3 as is this district.

Order in Chapter 11 Case Regarding Interim Compensation of Professionals and Setting First Interim Fee Hearings and Objection Dates" (hereafter "U.S. Trustee's Objection"). Section 331 provides:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief . . ., or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section § 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331. The U.S. Trustee does not dispute that under the Bankruptcy Code fees may be paid more often than every 120 days but insists that a hearing must be held on every application before any payment is authorized.

The U.S. Trustee contends that (1) the administrative fee procedure authorized by the court in the instant matter shifts the burden to the objecting party to show why fees should not be allowed; (2) the court cannot award fees until it reviews the application; and (3) *In re Knudsen Corp.,* 84 B.R. 668 (9th Cir. BAP 1988), wherein the court authorized payment of fees pursuant to an application procedure whereby professionals would be paid each month before the court entered an order, is distinguishable.

■■■ The U.S. Trustee seeks to distinguish *Knudsen* on the ground that it involved a liquidating chapter 11 for the benefit of the secured creditor and a retainer. Although *Knudsen* utilized an administrative fee procedure not unlike that ordered in this case, it did not include payment of a lump sum retainer against which professionals drew. The court

called its process "a fee retainer procedure". We call it an "Administrative Order Regarding Interim Compensation of Professionals". Regardless of the name assigned to the order, the basic procedure at issue is the same. In fact, *Knudsen* was commenced by the filing of involuntary petitions against the Knudsen Corporation and Foremost Dairies and Affiliates after which the debtors filed voluntary chapter 11 petitions. The court in *Knudsen* noted that § 328(a) provides that professionals may be employed "on any reasonable terms and conditions of employment, including on a retainer . . . ." Retainers contemplate payment of a lump sum at the beginning of a case or at intervals postpetition. *Id.* at 670. The court in *Knudsen* found that "[i]t makes little sense that the court could allow payment of a lump sum or periodic retainer before fees are earned, but not after." *Id.* at 671. The court agreed with the U.S. Trustee that allowance and disbursement of fees is permitted only in accordance with § 330 and § 331 but disagreed that those sections "absolutely prohibit the transfer of funds to professionals prior to compliance with those sections." *Id.* The court found the critical factor to be that the fees must not be finally allowed (that is, they must be subject to repayment) until a detailed fee application is filed with notice, an opportunity for objection, and court review. We agree with the *Knudsen* court. Inasmuch as the Bankruptcy Code allows payment of a retainer *before* services are performed, payment under the procedure at issue herein after services are rendered is permissible, especially where, as here, there is notice and an opportunity to object before any fees are paid, only 80 percent of the unobjected to fees will be paid prior to the hearing, and there is notice and an opportunity for hearing before fees are finally allowed. The safeguards of notice, opportunity to be heard, and court review enacted by Congress

are maintained.[13]

The court in *Knudsen* held that

in the rare case where the court can make the following findings, a fee retainer procedure ... may be authorized:

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

3. The court is satisfied that counsel can respond to any reassessment in one or more ways enumerated by the court; and

4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

84 B.R. at 672–73. We find that all four factors are satisfied in this case.

*In re W & W Protection Agency, Inc.,* 200 B.R. 615 (Bankr.S.D.Ohio 1996), the debtor sought a postpetition retainer which would be payable monthly upon issuance of an invoice and without notice, hearing, or court order. The court found that the circumstances did not meet the *Knudsen* standard. The court also concluded that a monthly payment arrangement was not appropriate because there was no showing of undue hardship, there was no indication that substantial fees would be incurred each month, and the case was expected to be resolved quickly.

■ The court in *In re Genlime Group, L.P.,* 167 B.R. 453 (Bankr.N.D.Ohio 1994), distinguished *Knudsen* in that the principal secured creditor in *Knudsen* approved the procedure and adequate safeguards existed. The court in *Genlime* held that payment of fees to professionals before notice to creditors and court approval is not allowed under the Bankruptcy Code. The procedure in *Genlime* differed from that proposed in this case. In *Genlime* the fee requests were to be submitted to the debtor and 75 percent of the requests were to be paid. There was no provision, as there is here, for circulation to creditors and opportunity to object before payment.[14] We find that, in light of the defi-

---

**13.** Further, the notice and hearing provisions of the Bankruptcy Code "are a method of implementing the Code's policy of having the court scrutinize attorneys' fees in order to avoid overreaching and wasting of estate assets" by professionals. *In re Knudsen,* 84 B.R. at 672. This policy is addressed by the administrative order because the order provides the opportunity for creditors and the court to review the fee applications.

**14.** The court in *Genlime* also voiced the worry that if debtors were "routinely permitted ... to make direct payments to professionals prior to notice and a hearing ... 'the rare exception to the Code's compensation procedures, which the court articulated in *Knudsen,* clearly would swallow the general rule.'" 167 B.R. at 456 (citation omitted). There is nothing routine about the use of the procedure at issue in the case before us. It has been used in *In re Wheeling Pittsburgh Steel Corp.,* 88–3664, *Allegheny International,* 88–20448, *In re Papercraft Corporation,* 91–20903, *In re Busy Beaver Building Centers, Inc.,* 90–03924, *In re Levinson Steel Company,* 90–00631, *In re Songer,* 92–20227, and *In re Sharon Steel Corp.,* 87–00207 and 92–10958, *Pittsburgh Food and Beverage, Inc.,* 95–20543, *In re Allegheny Health, Education and Research Foundation*

("*AHERF* "), 98–25773 through 98–25777, and *Pittsburgh Sports Associates Holding Co., et al.* ("the Pittsburgh Penguins"), 98–28174 through 98–28176, all without objection by the U.S. Trustee's office. Considering the nearly 3,000 chapter 11 cases that have been filed in this district in the past 15 years, the fee procedure at issue here is indeed used only in rare cases.

The administrative order process that has been in use in this district since 1985, before the U.S. Trustee's existence, and since 1987 when the U.S. Trustee system went into effect in this district, has not been challenged by the U.S. Trustee until now, even though §§ 328–331 have not been amended in any way material to this issue in that nearly 16 year period.

The U.S. Trustee stated at the hearing on November 3, 2000, that it objected to an administrative fee procedure before Judge Markovitz of this court in December of 1999 but that is the only time, other than in the instant case that the U.S. Trustee has taken the position it now asserts. When asked at the hearing why it objects now, the Attorney–Advisor from the U.S. Trustee's office stated that under 28 U.S.C. § 586 it has the discretion to comment on matters before the court

ciencies in the procedure in *Genlime,* the case is not applicable to the instant matter.

In *In re Dandy Lion Inns of America,* 120 B.R. 1015 (D.Neb.1990), the bankruptcy court authorized the debtor to employ accountants and to pay them upon receipt of monthly itemized bills. There was no requirement for filing a fee application or for notice and hearing either before or after payment to the accountants. The U.S. Trustee sought reconsideration of the order, arguing that the accountants could only be paid after filing a fee application, notice to creditors, and a hearing by the court. The bankruptcy court granted the motion to reconsider and required quarterly fee applications, with notice and hearing on a quarterly basis. However, it retained the provision for submission of monthly itemized bills to the debtor which the debtor was authorized to pay, in its discretion. There was no provision for circulation to creditors for objection before the debtor paid the monthly bills. The U.S. Trustee appealed. The district court remanded with instructions to the bankruptcy court to consider the procedure in light of the *Knudsen* factors. The district court "conclude[d] that the language of §§ 330 and 331 must be reconciled with the language of § 328" and that "the limiting factors in the *Knudsen* case must be considered." *Id.* at 1018. The court did not find fault with the procedure itself even though there was no provision for *any* review before payment and the debtor was permitted to pay the requested fees in its sole discretion.

and it cited the change in personnel in the local office in April of 1999 as the reason for the current objection.

The U.S. Trustee has the discretion to review fee applications and to file comments with the court with respect to fee applications or may object to the fee applications. 28 U.S.C. § 586(a)(3)(A)(ii). Section 586(a) provides specifically that

Each United States trustee ... shall

(3) supervise the administration of cases ... in chapter ... 11 ... by, when the United States trustee considers it to be appropriate—

In *In re Lotus Properties LP,* 200 B.R. 388 (Bankr.C.D.Cal.1996), the U.S. Trustee objected to a fee procedure whereby counsel sought to withdraw fees as they were charged and to treat deposits made by the debtor's sole general partner as if they were a retainer. Because of its financial condition, the debtor was unable to meet its postpetition expenses and it was foreseeable that the secured bank creditor would object to use of its cash collateral to pay counsel fees. The application to employ counsel for the debtor explained that the general partner had paid a prepetition retainer from personal funds and would pay fees and costs on a continuing basis, again from personal funds. The U.S. Trustee objected on the basis that the procedure violated its Guidelines and *Knudsen.* The court noted that delay in distribution of retainers, which are authorized by the Bankruptcy Code, "could cause substantial cash flow problems for attorneys, often resulting in submission of fee applications more frequently than" 120 days. 200 B.R. at 396. The court noted that after "extensive consultation by the U.S. Trustee with the Bench and Bar", *id.,* the U.S. Trustee Guidelines [15] were revised in 1994 to permit

professionals who have received a prepetition or post petition retainer to submit a monthly Professional Fee Statement to the Trustee, including documentation supporting the charges in the form of a regular fee application, and served on appropriate parties. This Statement allows the professional to withdraw funds from the segregated

(A)(i) reviewing ... applications filed for compensation and reimbursement ... and

(ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.

28 U.S.C. § 586(a)(3)(A)(i), (ii). In addition, the U.S. Trustee "may raise and may appear and be heard on any issue in any case or proceeding." 11 U.S.C. § 307.

**15.** We believe this refers to the Region 16 Guidelines.

client trust account in the amount requested in the Statement, *pending future notice or hearing.* If the U.S. Trustee or a party files and serves an objection, the court sets a hearing. If no objection is filed, the professional may draw down the requested compensation without further notice, hearing or order, pending the interim fee application, after one hundred twenty days has expired. The Employment Guide makes clear that although the professional may be performing services covered by a retainer, he or she is still required to file interim fee applications every 120 days. Once the full amount of the retainer is exhausted, the professional is precluded from filing any further Fee Statements.

*Id.* at 396–97 (emphasis added).

### The Current Region 16 Guidelines

The U.S. Trustee's Guidelines in effect in Region 16 are substantially the same today. The Region 16 website contains its Guide to Applications for Employment of Professionals and Treatment of Retainers ("Employment Guide"). The Employment Guide provides, in pertinent part,

1. Any professional who has received a prepetition or postpetition retainer must submit to the United States Trustee a monthly Professional Fee Statement ... not later than the 20th day after the end of the month during which professional services were rendered, together with documentation supporting the charges for the professional services and expenses in the form required for professional fee applications in the "United States Trustee Guide to applications for Professional Compensation." In addition, a copy of the Professional Fee Statement, (without the supporting documentation) must be served on the official creditors' committee or, if no committee has been appointed, on the 20 largest unsecured creditors, and on

those parties who have requested special notice....

2. The Professional Fee Statement must explicitly state that the fees and costs will be withdrawn from the trust account in the amount requested *without further notice or hearing,* unless an objection is filed with the clerk of the court and served upon the applicant(s) within 10 days after service of the Professional Fee Statement. If no objection is timely filed and served, the professional should refrain from withdrawing any funds until the objection has been resolved by the court.

3. Notwithstanding the submission of the Professional Fee Statement, as long as the professional is performing services covered by a retainer, the professional must submit interim fee applications to the court every 120 days .... [16]

Employment Guide (emphasis added)(<http://www.usdoj.gov:80/U.S. Trustee/r16/HTMLGuideEmployment594.htm>) (last visited Nov. 15, 2000).

Thus, the U.S. Trustee's procedures in Region 16 permit withdrawal of funds in a retainer account *prior to a hearing* and permit payment of *the entire amount* sought in the monthly fee statements absent objection. The U.S. Trustee's procedures differ from the procedure authorized by this court in the administrative order in that (1) the court's order does not permit payment of the entire monthly amount but limits it to 80 percent of the undisputed amount and (2) the U.S. Trustee's procedure disallows any payment of a monthly bill if an objection is lodged, whereas the court prohibits payment of any portion of the fee that is the subject of an objection by the U.S. Trustee or any creditor. The U.S. Trustee's Employment Guide is illustrative of the fact that, without violating the Bankruptcy Code, disbursements of fees prior to their final allowance by the court is permitted.

**16.** The Employment Guide further provides that once the retainer is exhausted, "no further Professional Fee Statements shall be filed."

*The Guide to Judicial Management of Bankruptcy Mega–Cases Published by the Federal Judicial Center*

■■ Further support for the administrative process we employ in this case is contained in the 1992 Guide to the Judicial Management of Bankruptcy Mega–Cases (hereafter "Guide"), published by the Federal Judicial Center, the Board and Director of which are all federal judges.[17] The Guide recognizes the unique pressures on the court and the professionals presented by large or complex cases: professionals invest "huge quantities of time" and receiving payment only three times a year may impose a "significant economic disadvantage" to the professionals. *Guide* at 18. In addition, defraying payment results in the debtor having to remit much larger amounts, although at longer intervals, which is often difficult for debtors. The Guide recognizes that holding more frequent fee hearings increases the administrative burden on the court and the parties. *Id.* The Guide describes how different courts handle the problem and notes that some courts use a procedure such as that to which the U.S. Trustee has objected in this case. *Id.* at 18–19. The Guide also notes that some courts solicit assistance in performing their duty to review fee petitions by

> appoint[ing] their own experts or auditors to review fee applications and make recommendations to the court. Others have relied on the U.S. trustee to make evaluations, although the extent of assistance with fee applications this office provides varies greatly from district to district. Other courts have asked the creditors' committee to review all fee applications and submit to the court a

written report on them.... All of these methods have the benefit of ensuring that, even if there are no objections to an application, the court will have some assistance in determining to what extent the hours billed and the rates charged were necessary and reasonable.

*Id.* at 20. In the case before us the court cannot and is not delegating its obligation to review the fees. *See In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 841 (3d Cir.1994)(bankruptcy court has "a duty to review fee applications, notwithstanding the absence of objections" which duty "derives from the court's inherent obligation to monitor the debtors' estate and to serve the public interest"). However, the court has an obligation to manage its case load in a fashion that is expeditious while providing "equal justice." The administrative order, with its requirement that the debtor and representatives of creditors and the U.S. Trustee review and certify their review and any objections to the court, and the other safeguards described above, is that management tool.

## Analysis

■■ The administrative order proposed in the instant matter provides for notice to creditors and the U.S. Trustee before monthly payment is made. There is a second notice and opportunity to object when formal quarterly fee applications are filed prior to the time of the hearing on the fees. There is ample opportunity at the time the fee requests are first circulated for any party in interest to object to a line item. Any substantive items, identified on a line-by-line basis, that are objected to cannot be paid.[18] Eighty percent of

---

17. The Chairman of the Board of the Federal Judicial Center is the Chief Justice of the United States. Two other board members are United States Courts of Appeals Judges. Three are United States District Courts Judges, one is a United States Bankruptcy Judge and the eighth is the Director of the Administrative Office of the United States Courts. The Director of the FJC is also a Judge.

18. At the hearing on November 3, 2000, it was made clear that objections to monthly fee requests must be to specific items. Global objections to any particular fee application will not be considered to be an objection that will preclude payment under the administrative order. Objections lodged on the basis that a party in interest disagrees with the administrative procedure also will not be considered to be the type of objection that will

fees that are not objected to are to be paid when the court and Debtor receive the certificates described above. One hundred percent of requested expenses are to be paid. Quarterly this court will review all fee applications and resolve any objections. To the extent the court then determines that fees were paid that should not have been, an order of disgorgement can and will be entered.[19] After the hearing, any balance of allowed but as yet unpaid fees from that quarter will be permitted to be paid immediately.

The court in *Knudsen* restricted use of its fee allowance process to those cases which are unusually large, in which waiting for payment would impose an undue hardship, in which the court is satisfied that if disgorgement is ordered counsel will be able to comply, and where the procedure itself has been noticed and the subject of a hearing before it is authorized or implemented. We agree with the court in *Knudsen* that § 328 of the Bankruptcy Code permits the court to approve a procedure such as that adopted in this case which allows monthly interim payments of undisputed fees after those fees have been subject to scrutiny and an opportunity to object by parties in interest, when a final allowance of the fees is subject to the filing of quarterly fee applications which the court will review whether or not objections have been lodged, after notice and opportunity to be heard are provided. We recognize that not every case in which an administrative fee procedure may be appropriate will necessarily meet all the *Knudsen* factors. We also recognize that there may be factors other than those identified in *Knudsen* which may come

into play in a given case and warrant an administrative fee order. Accordingly, we do not adopt the *Knudsen* factors as a *per se* test for approval of an administrative fee procedure but we accept that the factors specified therein are among those to be considered.

The administrative procedure at issue is not used on a routine basis nor was it designed to be. It was adopted for cases that are expected to generate significant administrative expenses in the form of counsel fees either because the cases are large in some respect (for example, dollar amount, creditor number) or complex. The matter before us is both. In addition, the professionals involved in this case are known to the court either through their prior appearances before us or by reputation and there is no question that any of them would be able to comply with a disgorgement order in the unlikely event that one would be entered.[20]

At the July 7 hearing, in the interest of accommodation and with the consent of the Debtor, this court set monthly fee hearings in August, October, and November. In November, the professionals (particularly Debtor's counsel) who have been required to submit monthly fee applications mentioned the extra expense the monthly fee hearing process creates within their firms, thereby increasing the fees this estate must bear and decreasing sums available to pay trade and asbestos creditors. The reasonable and necessary professional fees that have been approved exceed $1 million and will increase as the case progresses and additional professionals are added. The professionals are not in the business of lending money to debtors. They are

---

preclude payment under the administrative order. Only specific objections to itemized requests are appropriate and those objections must be of the type contemplated by the Bankruptcy Code. Rule 9011 applies to objections to fee applications as it does to other matters.

19. Fees are subject to disgorgement in all bankruptcy cases whether they are paid pursuant to an administrative order of this type

or whether they are paid only after notice and hearing. 11 U.S.C. § 329(b).

20. It goes without saying that if we anticipated that a disgorgement order was likely to be entered with respect to any of the firms some additional safeguard, as noted in *Knudsen*, could be considered by the court. It is not necessary to reach the issue of appropriate additional safeguards in this case.

not expected to fund large, complex reorganizations. The administrative procedure process protects the interests of all interested parties. The integrity of the bankruptcy system is protected as well. None of the concerns that would militate against entry of the administrative order are present in this case. This is a huge case with over 200,000 asbestos claimants alone. There are state and federal court lawsuits filed on their behalf nationwide as well as several complex adversary actions pending in the bankruptcy court. The professionals have been forced to appear at three separate hearings on the simple issue of a process for the payment of interim fees.

In addition, it is much easier on Debtor's finances, cash flow, and accounts payable procedures for the Debtor to make monthly payments than to reserve and amass the huge sums that will be required to pay the fees that will accrue over a three or four month period. Counsel for Debtor informed the court at the hearing on November 3, 2000, that several more professionals are to be added to the roster, including counsel for representatives of future claimants and a claims agent, among others. There is also a motion pending by the Asbestos Committee to hire another professional to assist in estimating bodily injury claims. The addition of these professionals will further complicate the task of holding monthly fee hearings. It is nearly impossible in a case such as this for the court to be able to make an informed and reasoned judgment with respect to the reasonableness of the fees requested when presented only with the minute picture that monthly fee applications present. The fee procedure adopted in this case is consistent with the Bankruptcy Code and is recognized by the Board of the Federal Judicial Center as expressed in the Guide to the Judicial Management of Bankruptcy Mega–Cases as a method adopted by courts to administer the problem of fees in cases such as the instant one. The administrative procedure in this case provides the necessary safeguards to insure that fees will be addressed and allowed in due course, with a 20 percent holdback in the event the court were to disallow a payment, plus the ability to order disgorgement.

Section 328 permits retainers. Whether the administrative procedure authorized in this case is viewed as a monthly retainer based on the prior month's billing or as interim payment of fees actually incurred is a distinction without a difference for purposes of interim payment.

For all these reasons, we find that (1) the procedure does not shift the burden to the objecting party to show why the fee should be disallowed. The burden is always on the applicant. The applicant can be paid only the undisputed amount. If an objection is lodged, the portion of fees objected to cannot be paid until the court resolves the objection at the quarterly fee hearing; (2) the court may authorize fees to be paid monthly on an interim basis upon notice to creditors subject to quarterly review by the court; (3) the court has the power to award fees on an interim basis upon notice to creditors and quarterly review and opportunity for objection and hearing; and (4) the administrative order process utilized in *Knudsen* is not materially distinguishable from that in this case.

The U.S. Trustee's objections are overruled.